209 So.2d 533 (1968)
Reuben MYLES et ux., Plaintiffs-Appellants,
v.
Gloria C. LEE et al., Defendants-Appellees.
No. 10943.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1968.
*534 Dhu and Lea S. Thompson, Monroe, for Reuben Myles and Irma W. Myles, plaintiffs-appellants.
Davenport, Farr & Kelly, Monroe, for Gloria C. Lee and Lumbermens Mutual Casualty Co., defendants-appellees.
Before GLADNEY, AYRES and PRICE, JJ.
AYRES, Judge.
Plaintiffs, husband and wife, seek by this appeal an increase in the awards of damages arising out of an automobile collision. Defendants, through answer to the appeal, submit for reconsideration the question of liability and, in the alternative, pray for a reduction in the awards.
The accident occurred on a downgrade ramp from the Ouachita River bridge on Interstate 20 leading to Catalpa Street in the City of Monroe. Plaintiffs' vehicle, a 1965 model Buick Wildcat, driven by plaintiff Irma W. Myles, was the fourth car in line on the ramp stopped awaiting a favorable light at the Catalpa Street intersection when it was struck from the rear by a 1960 Lincoln automobile driven by Gloria C. Lee. The Buick was knocked forward into the vehicle in front of it. The Lincoln and Buick became so entangled as to require the service of a wrecker to disengage them. The accident occurred about 7:30 a. m. April 1, 1966, during the morning's traffic rush.
Charges of negligence directed to Mrs. Lee consisted primarily of her failure to observe and obey a red light, or stop signal, or to maintain control of her vehicle and bring it to a halt before striking plaintiffs' vehicle in her lane of travel awaiting a favorable signal before proceeding into the intersection. Additional charges of fault directed to Mrs. Lee are excessive speed on a major city thoroughfare, in extra heavy traffic, and failure to keep a proper lookout or to take action to prevent the collision. Plaintiffs further rely upon the doctrine of res ipsa loquitur.
Defendants seek to avoid liability on the ground that the accident resulted from a sudden failure of the brakes of the Lincoln car, which they maintained were kept in good condition, were regularly inspected, and had worked properly to the time of the accident. In other words, defendants rely upon the doctrine of latent, or concealed, defects in the brakes of the car and assert that under the circumstances the accident must be regarded as unavoidable. In the alternative, plaintiff Irma Myles is charged with contributory negligence in her failure to use a seat belt provided for her safety.
The trial court concluded from the evidence there was a sudden failure of the brakes of the Lincoln automobile but that the driver was nevertheless guilty of negligence in her failure to use the emergency brake and, moreover, that the driver of the Buick was without fault.
Under ordinary and usual circumstances there can be no question of the fault of a motorist in running into the rear of a motor vehicle halted at an intersection awaiting a change in signals. Therefore, the defenses urged are affirmative ones and the burden rests heavily upon the defendants to exculpate the driver from negligence.
In support of defendants' contention, Mrs. Lee gave evidence to the effect that her car had been serviced the evening prior to the accident by service station attendant Walter M. Caldwell, III, who returned the vehicle to her home. She did not use the car until she departed for school, where she was employed as a teacher, about 7:00 o'clock the following morning. En route, she stopped for traffic lights before reaching the scene of the accident and her brakes were said to have worked perfectly. Caldwell testified to checking the brakes and finding the master cylinder filled with fluid; no difficulty in their use was experienced in making delivery of the car to defendant's home.
James Gilbert Lee, husband of Mrs. Gloria Lee, testified to driving the car from *535 the scene of the accident to Hurl's Garage in West Monroe by using the emergency brake. He and Hurl Johns, operator of the garage, disassembled the brake equipment and found a bent container and a ruptured rubber gasket. These were described as defects which could not have been found by visual examination but only after disassembling the entire braking unit.
In opposition to this testimony is the testimony of two men who came to the scene of the accident in a wrecker to move the vehicles from the highway. One testified he "pumped" the brakes of the Lincoln automobile to hold it while the wrecker pulled the Buick and the Lincoln apart. The other testified to checking the fluid and finding the master cylinder about half full.
The trial court accepted the testimony of Lee and Johns inasmuch as he found them well qualified and in position to know what really happened, since they had dismantled the braking unit, found the defects, and brought the brake assembly into court as evidence.
The doctrine of latent defects in automobiles has been recognized as a valid defense by the courts in actions of this kind. The proof, however, must be of a most convincing nature. Nevertheless, we find no substantial basis for disagreement with the conclusions reached on this point by the trial court and to the effect that such character of proof was made. In this connection, see: Hassell v. Colletti, 12 So.2d 31 (La.App., Orl.1943); Trascher v. Eagle Indemnity Co. of New York, 48 So.2d 695 (La.App., Orl.1950); Breaux v. Valin, 138 So.2d 405 (La.App., 3d Cir. 1962).
Every motor vehicle is required, under the provisions of LSA-R.S. 32:341, to be equipped with dually operated brakes adequate to control the movement of and to stop and hold such vehicle. This is a safety measure. The intent is obvious that a motorist should resort to the use of the emergency brake in cases of emergency where the other brakes are ineffective.
It is well settled in the jurisprudence of this State that the failure of a motorist to use the emergency brake on his vehicle after realizing the foot brake is ineffective and while time, distance, and opportunity remain to thereby control the vehicle constitutes negligence. Fulco v. Lumbermen's Mutual Casualty Company, 110 So.2d 871 (La.App., 2d Cir. 1959); Davis v. New York Underwriters Insurance Company, 141 So.2d 673 (La.App., 1st Cir. 1962); Davis v. United Services Automobile Association, 159 So.2d 398 (La.App., 2d Cir. 1963); Robinson v. American Home Assurance Co., 183 So.2d 77 (La.App., 3d Cir. 1966).
Mrs. Lee testified to the effect that she was about ten car lengths from plaintiffs' vehicle when she discovered her foot brake would not function. Nevertheless, she did not apply her emergency brake. After ascertaining that her brakes had failed, she pondered the situation, thought first of going through the piers underneath the main highway, but concluded that was more dangerous than to just "ride the situation out." These facts, as pointed out by the trial court, indicate that Mrs. Lee would have been able to control her car and to avoid the accident if she had applied the emergency brake after discovering that the brakes usually applied would not function. According to her testimony, she had sufficient time to contemplate other evasive action and during that time she could have made use of the emergency brake.
We conclude, as did the trial court, that Mrs. Lee's negligence in her failure to use the emergency brake caused the accident.
With reference to defendants' charge of contributory negligence directed against plaintiff driver, no Louisiana cases involving the use of seat belts have been cited. The failure to use seat belts as a safety device cannot be said to constitute a contributing factor in the occurrence of an accident itself such as is concerned here. The plea in the instant case is directed to the injuries allegedly sustained to Irma
*536 Myles' knees. The medical experts who testified found no injury to the knees. Therefore, the plea has no application in the instant case.
Remaining for consideration is a question as to the adequacy of plaintiffs' awards of damages.
Immediately following the accident Irma Myles consulted Dr. Sol Courtman, a general practitioner, at his office. She was at the time in a state of shock and complained of pain in her neck, back, and knees. Medication was administered, after which she returned home under instructions to continue with the prescribed medication. X-rays, however, made at the time revealed no injury to the knees. Soreness over the body developed and worsened to such a degree that Dr. Courtman was again consulted April 4, 1966. On that occasion the doctor committed plaintiff to a hospital where she remained until April 22, 1966. X-rays were then made of the cervical and lumbar areas of the spine with a negative result. The doctor's diagnosis was that plaintiff had sustained a strain of her neck and lower back. Tenderness was noted in those areas. Muscle relaxants, mild sedation, and heat treatments were administered. Bed rest was also prescribed. At intervals, plaintiff was said to have suffered severe pain. While undergoing hospitalization plaintiff was fitted with a lumbosacral support which she continued to wear for an undisclosed period of time.
Though plaintiff continued to complain of pain even until the date of trial, the doctor was unable to substantiate her complaints after June 1, 1966, with any objective findings. At the request of Dr. Courtman, plaintiff was seen by Dr. Faheam Cannon, an orthopedist, while she was in the hospital as well as on or about August 1, 1966. His reports were made to Dr. Courtman who testified that his opinion was based not only upon his own findings but upon Dr. Cannon's reports. The reports, however, were not offered in evidence nor was Dr. Cannon's testimony taken.
Upon the request of defendants, plaintiff was examined October 21, 1966, by Dr. Joel B. Smason, an orthopedist. According to his testimony, there were no objective findings of any continuing or residual injury, pain, or disability. No evidence of an injury to the knees was found. Based upon his findings the doctor was of the opinion plaintiff was able to perform her duties as a schoolteacher.
Upon the facts disclosed by the record, the material portions to which we have referred, we find no basis for disagreement with the award of $2,500.00 to plaintiff for the pain and suffering sustained by her resulting from the accident. The award, in our opinion, is neither inadequate nor excessive.
These findings as to the extent and duration of Irma Myles' disability eliminate any basis for disagreement with the award of damages for loss of wages. The award included wages lost during the period of her disability as well as wages during five days' sick leave which she was required to use during the period of her recovery. This aggregated the sum of $740.96. Though plaintiff contends that for the succeeding school year she was disabled to perform the duties of a teacher, the court obviously concluded, and we think correctly so, that she had recovered from her injuries and was fully able to perform the duties of her profession. Hence, allowance for loss of further time or for the use of additional sick leave is not supported by the evidence.
With respect to the damage to the automobile, plaintiff Reuben Myles claims it was damaged beyond repair, and he should be compensated for the difference between its value at the time of the wreck and its salvage value thereafter. Defendants contend that the car can be repaired and placed in as good condition as it was prior to the accident. Thus defendants' *537 position is that, for a price of $1,844.05, exclusive of a discount of 15% on the parts to be used, or $153.77, the car can be repaired in accordance with an itemized estimate of damages.
The automobile was purchased new June 17, 1965, from Riley Buick, Incorporated, for a price of $3,788.00. Its speedometer reading was 8,318 miles at the time of the accident. It was in excellent condition prior to the wreck. By force of the impact when struck by defendants' vehicle, the rear end of plaintiffs' car was caved in as was the front end when knocked into the car ahead. The frame of the car was bent and "buckled" by the force of the collision.
The estimate of damages was made from a visual inspection of the car. No inspection was made for any concealed damages such as those which may have been sustained to the motor or transmission. Neither the appraiser nor the shop foreman of the Buick company was in position to testify there were no other damages to the car, undiscernible by a visual examination. The foreman testified that if, in the course of repairing the vehicle, other damages were discovered, the estimated price for the repairs would be accordingly increased. The $1,025.16 estimation listed only necessary parts for the repair of the defects as disclosed by a mere visual inspection.
The proof as to whether the car might be repaired and placed in its former condition is apparently in conflict. The testimony of defendants' witnesses who inspected the car and made an appraisal of the damages is vague; that of plaintiffs' witnesses, Earl Bradshaw, who had been in the automobile repair business for 35 years, and Henry Barsh, an automobile mechanic of 22 years' experience, is that the automobile cannot be so repaired and placed in its former condition. Considering the testimony of plaintiffs' witnesses in conjunction with the extensive damages sustained to the car, as well as the labor and parts listed following a visual inspection of the car, we conclude the evidence preponderates in plaintiffs' favor and establishes that the automobile was damaged beyond repair.
W. J. Riley, Jr., president of Riley Buick, Incorporated, from whom plaintiffs purchased the car, stated, as his opinion, that the car prior to the accident had a value of not less than $3,000.00, possibly $3,500.00. The salvage value of the car was estimated at $500.00. From this, we conclude plaintiffs have sustained a loss to their car of $2,500.00.
The awards totaling $1,317.73 for wrecker services and hospital and medical expenses are, in our opinion, sufficiently supported by the record.
Reuben Myles lastly complains of the nonallowance of expert-witness fees for the witnesses Henry Barsh, Earl Bradshaw, and W. J. Riley, Jr.
Witnesses called to testify in court to opinions founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, are entitled to compensation therefor, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required. LSA-R.S. 13:3666.
The testimony of two of these experienced witnesses was important and material to establish that plaintiffs' automobile was damaged beyond repair, as was the testimony of the other as to the value of the car prior to the accident and its salvage value thereafter. While it would appear that a minimum of time was consumed by these witnesses in expressing their expert opinions, they are, we think, entitled, at least, to a minimum expert-witness fee in the sum of $25.00 each. Their testimony on the points concerning which they expressed opinions was indispensable in establishing plaintiffs' claim.
For the reasons assigned, the judgment appealed is recast, and, accordingly,
*538 It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff Reuben Myles for the full sum of $4,558.69 and in favor of plaintiff Irma Myles for the full sum of $2,500.00 against Gloria C. Lee and Lumbermens Mutual Casualty Company, in solido, together with legal interest on each of said sums from judicial demand until paid, and for all costs including expert-witness fees in the sums of $50.00 for Dr. Sol Courtman and $25.00 each for Henry Barsh, Earl Bradshaw, and W. J. Riley, Jr., and
As thus amended and recast, the judgment appealed is affirmed. Defendants-appellees are assessed with the cost of the appeal.
Amended and affirmed.