HOOD, Judge.
Plaintiff, Nathan A. Marcantel, Jr., claims damages for personal injuries which he sustained when an automobile occupied by him was struck by a truck owned by J. B. Best Manufacturing Company. The suit was instituted against Aetna Casualty & Surety Company, insurer of the Best truck. Houston Fire and Casualty Insurance Company, insurer of plaintiff’s employer, intervened claiming reimbursement for workmen’s compensation benefits and medical expenses which it had paid to or for Marcantel.
The case was tried by jury, with the result that a verdict was rendered in favor of plaintiff awarding him $20,000.00. Judgment was read and signed by the trial court in accordance with that verdict, and the judgment also decreed that out of the award made to plaintiff the intervenor is to be reimbursed the sum of $1,406.82. The defendant’s motion for a new trial was denied, and defendant has appealed.
Defendant contends primarily that the award made to plaintiff is excessive and should be reduced. Alternatively, it contends that the trial judge erred in denying defendant’s motion for a new trial.
The accident occurred on April 14, 1966. While plaintiff was seated behind the wheel of a parked, state-owned automobile, the Best truck ran head-on into the front of the parked car, causing plaintiff to suffer the injuries which form the basis for this suit.
*158 The injuries which were sustained by-plaintiff as a result of that accident were diagnosed as being: (1) A cerebral concussion; (2) laceration of the scalp three and one-half to four inches long; (3) laceration of the tongue; (4) injuries to his teeth and gums; (5) contusion of the chest; (6) internal injuries consisting primarily of bruises of the bowel; (7) bruises and abrasions of the upper arms and left forearm; (8) hematuria; (9) abrasions and contusions of both knees; and (10) old blood in the bowel movements.
With reference to the injuries to plaintiff’s teeth, the evidence shows that he sustained a fracture of one of his upper teeth and fractures of five of his lower teeth. The upper tooth was saved, and the damage was repaired by capping the tooth with a porcelain jacket. The five lower teeth which were injured had to be extracted. Shortly thereafter plaintiff was provided with a temporary plastic partial plate which he wore for about six weeks, and then he was fitted with a permanent removable bridge which h'p has used since that time.
Plaintiff received prompt and adequate medical treatment after the accident occurred. He was treated by Dr. Louis D. Bishop, a physician and surgeon, from the date the injuries were sustained until May 11, 1966, when Dr. Bishop discharged him as being fully recovered (except for some needed dental work) and as being able to return to his full employment on May 16, 1966. He also was treated by Dr. C. E. Rutledge, Jr., a dentist, from the date of the accident until a permanent removable plate was fitted to replace the five teeth which had been extracted, all of which covered a period of at least nine weeks.
Marcantel was about 32 years of age and was employed as a State Trooper at the time the accident occurred. He was in a state of shock for several hours immediately following the accident. He was hospitalized for a total of eight days, and he suffered pain in the area of his abdomen for a period of about 30 days after the injuries were sustained. He returned to his regular employment as a state trooper on May 16, 1966, that being 32 days after the accident occurred, and he has continued to perform the duties of that employment since that time. The parties stipulated that as a result of the accident plaintiff lost $320.00 in wages, and that the total special damages sustained by him, including loss of wages and medical expenses, amount to $1610.00.
We think the evidence shows that plaintiff fully recovered from all of his injuries within 32 days after the accident occurred, except that he was left with the following permanent residuals: (1) The loss of five lower teeth which were repaired by fitting plaintiff with a permanent removable plate; (2) the injury to one upper tooth which was repaired by capping it; (3) a scar almost four inches long along the hairline on plaintiff’s forehead; and (4) a scar on plaintiff’s lower lip.
Marcantel testified that his removable plate worries and irritates him because after he eats he has “to take ’em out and wash them,” and when he gets nervous he starts “to work it” with his tongue and that • eventually causes him to experience some pain where the plate anchors to the natural teeth. He testified that the upper tooth which was capped is more sensitive to heat and cold than are his other teeth. He concedes that he has encountered no problem in eating with his recapped upper tooth and with his lower plate.
Dr. Rutledge testified that plaintiff’s teeth were “above average” before the accident, that it was normal for the recapped tooth at first to be more sensitive than other teeth to heat or cold, and that the removable plate may have to be ■ adjusted occasionally. He stated, however, that after the repair work was completed plaintiff’s teeth look “pretty natural,” that from an “aesthetic” point of view he cannot tell which of plaintiff’s teeth have been repaired, that the plate constitutes a *159 “pretty good substitute” for the natural teeth, and that plaintiff can eat “pretty much what he wants.”
The scar on plaintiff’s forehead is about four inches long. It begins at the hairline, then comes down about one inch below the hair. Large color photographs of plaintiff’s face, taken about 14 months after the accident occurred, shows that the line of the scar is very thin and it is not discolored. Although the scar can be seen on close inspection, it has h'ealed so well that we do not think it will be noticed ordinarily and will cause plaintiff no embarrassment.
The same may be said for the small scar on plaintiff’s lip. Insofar as appearances are concerned, this scar consists of a small line on the left side of plaintiff’s lower lip that is slightly darker than the rest of the lip. We find it to be so slight that ordinarily it will not be noticed, it should cause plaintiff no embarrassment at all and we do not regard it as being disfiguring. Plaintiff testified that there is a bump on the inside of his lower lip, that being a part of the scar tissue, which he can feel with his tongue. He stated, however, that it does not pain him, affect his speech, or bother him in any way, except that he notices it when he feels it with his tongue.
As we have already noted, the jury awarded plaintiff damages in the sum of $20,000,00. Since plaintiff sustained $1610.00 as special damages, the remaining sum of $18,390.00 obviously was awarded as general damages for the injuries which plaintiff sustained.
Defendant timely filed a motion for new trial after the decree was signed. This motion was denied, but the trial judge assigned the following reasons for denying it:
“Let me say that this Court is convinced the award made by the jury to the plaintiff is clearly excessive, and is not in any way in line with awards made for somewhat similar injuries in prior cases. However, I am informed by counsel for plaintiff that he doubts his client would agree to a remittitur of, say, even $12,500.00, and from our experience in the settlement negotiations prior to the trial, the Court is convinced that the plaintiff would not agree to a remittitur of any amount to bring this judgment in harmony with prior decisions with respect to similar injuries. That being the case, the alternative under Article 1813 would be to grant a new trial.
“I do not believe that is a practical remedy under these circumstances, in spite of Article 1813. The record is complete. The Court of Appeal has authority to review the facts as well as the law. Certainly, if this case is appealed justice will be .done. For me to grant a new trial, and try the entire case again, seems to be a rather costly and impractical way of correcting this excessive verdict. I think the more appropriate remedy would be for the defendant to take an appeal.
“For these reasons the motion for a new trial is denied.”
We agree with the trial judge that the award made by the jury is excessive, and that it is out of proportion to awards made in other similar cases. We have considered the awards made in the many cases which were cited to us by both parties. With those cases in mind, and considering the pain which plaintiff suffered, the permanent facial scars which he sustained, the fact that the jury obviously considered the injuries to be of a serious nature, and the nature of these injuries, we have concluded that an award of $10,000.00 for all of the injuries which were sustained, plus an additional award of $1610.00 for special damages, would be fair and adequate. The judgment appealed from will be amended, therefore, by reducing the award to the aggregate of these two sums.
Since we have decided to amend the judgment appealed from by reducing the award, we will not consider the alternative *160 argument made by defendant that the new trial should be granted.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount of the award made to plaintiff from $20,000.00 to the sum of $11,610.00. In all other respects the judgment appealed from is affirmed.
Amended and affirmed.