217 So.2d 702 (1969)
Paul Julius FONTENOT, Plaintiff-Appellee,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.
No. 2481.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1969.
*703 Plauché & Plauché, by Thomas W. Sanders, Lake Charles, for defendant-appellant.
Cormie & Morgan, by Robert Morgan, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Paul Julius Fontenot, claims damages for personal injuries sustained by him when an automobile which he was driving collided with a car being driven by Edwin C. Wright. The suit was instituted against The Fidelity & Casualty Company of New York, insurer of the Wright car.
The case was tried by jury, with the result that a special verdict was rendered finding that Wright was negligent, that plaintiff was free from contributory negligence, and that plaintiff sustained damages *704 in the amount of $15,000.00. Judgment was rendered in favor of plaintiff and against defendant for the amount stated in the verdict. Defendant has appealed.
The questions presented on this appeal are: (1) Is plaintiff barred from recovery by his own contributory negligence? (2) Did the trial court err in refusing defendant's requested charge relative to plaintiff's alleged failure to use a seat belt? (3) Did the trial court err in failing to grant a new trial in view of plaintiff's refusal to accept a remittitur? (4) Is the award made to plaintiff excessive?
The accident occurred about 8:00 p.m. on March 13, 1967, at the intersection of Louisiana Highway 378 and Helen Street, about one mile north of Westlake, Louisiana. Immediately prior to that time the Wright automobile was traveling north and plaintiff's car was being driven south on the highway. When Wright reached the intersection he turned to his left in front of the Fontenot car, and the two vehicles collided while Wright was making this left turn maneuver. The point of impact was at the intersection in the southbound traffic lane of the highway.
Defendant concedes that Wright was negligent in attempting to make a left turn when it was unsafe for him to do so. It contends, however, that plaintiff also was negligent in driving at an excessive rate of speed, and that he thus is barred from recovering by his own contributory negligence.
The highway at that point is a straight, level, relatively narrow, two-lane, blacktopped road. It was dark when the accident occurred, but the weather was clear, the highway was dry, the headlights on both vehicles were burning and visibility was good. The posted speed limit at that point was 40 miles per hour.
Plaintiff testified that he was driving at a speed of 40 miles per hour as he approached the intersection. A following motorist estimated that Fontenot was traveling about 38 miles per hour at that time. No one testified that plaintiff was driving in excess of the legal speed limit.
Fontenot's car, however, left an unbroken line of skid marks on the highway for a distance of 90 feet before it finally came to rest at a point from five to seven feet beyond the place where the collision occurred. The cars apparently collided with considerable force, since both vehicles were totally wrecked, serious injuries were sustained by the occupants, and the Wright vehicle was knocked a distance of from 10 to 15 feet southwest of the point of impact. A state trooper testified that according to a chart furnished to him by the state only 82 feet of actual braking distance is required to bring an automobile traveling 40 miles per hour to a stop.
Defendant argues that the Fontenot car must have been traveling at a speed greater than 40 miles per hour, since it skidded a distance of more than 82 feet and then struck the other vehicle with considerable force. Plaintiff answers that argument by pointing out that some work had been done on Helen Street, and as a result some pea gravel and shell had become spread out on the southbound lane of the highway, thus preventing Fontenot's brakes from stopping the car as soon as they otherwise might have stopped it.
A plea of contributory negligence is an affirmative defense, and the party pleading it bears the burden for establishing facts which will support such a plea. LSA-C.C.P. art. 1005; McDaniel v. Louisiana & Arkansas Railway Company, 194 So.2d 119 (La.App.2d Cir. 1967).
We think the evidence in the instant suit fails to establish that Fontenot was traveling at a speed in excess of the legal speed limit as he approached the intersection where the collision occurred. There were no unusual circumstances which should have caused him to become apprehensive of danger or which should have induced him to reduce his speed at that *705 point. We conclude, therefore, that the jury did not err in finding that Fontenot was not driving at an excessive rate of speed.
Defendant contends that plaintiff also was guilty of contributory negligence in failing to have his seat belt fastened at the time the accident occurred. At the trial defendant requested that a special charge be delivered to the jury, which charge, in substance, would have instructed the jury that it might consider the question of whether the wearing of a seat belt would have prevented the injuries, whether the use of that safety device would have caused the injuries to be less severe, and whether the failure of plaintiff to use a seat belt constituted a failure on his part to exercise ordinary care for his own safety. The trial judge refused to deliver this special charge. Defendant contends that he erred in doing so, and that because of the failure to deliver this charge defendant is entitled either to a new trial or to a reduction of the award which was made to plaintiff.
Our brothers of the Second Circuit Court of Appeal have held that the failure of a motorist to use a seat belt which was available to him did not constitute a proximate or contributing cause of the accident. Myles v. Lee, 209 So.2d 533 (La.App.2d Cir. 1968); Lawrence v. Westchester Fire Insurance Company, 213 So.2d 784 (La. App.2d Cir. 1968). We agree with them in that holding.
Defendant argues here, however, that even though the use of a seat belt may not have avoided the accident, plaintiff should not be allowed full recovery for all of his injuries if those injuries could have been prevented or minimized by the use of such a safety device.
We find it unnecessary to rule on the legal questions presented by this argument. The evidence in the instant suit fails to show either that plaintiff was not using a seat belt when the accident occurred, or that his injuries would have been prevented or minimized if he had been using one. The jury would not have been justified in concluding that plaintiff did not have his seat belt fastened or that the use of a seat belt would have prevented or minimized the injuries. The refusal of the trial court to give the requested special charge, therefore, did not prejudice the defendant's rights.
On the basis of these factual findings, we conclude that no prejudicial error was committed by the trial judge in his refusal to give the above mentioned special charge. We express no opinion as to whether the defendant might have been entitled to have the requested special charge given under other circumstances.
After judgment was rendered in this suit defendant filed a motion for a new trial, and alternatively it demanded that the court order a remittitur. The motion was denied, and the trial court assigned the following reasons for that action:
"It appears to the Court that the jury's award, which was primarily for the loss of teethalthough other injuries were established alsois high, considering the awards in our jurisprudence in somewhat similiar cases. However, I am informed by counsel for the plaintiff that his client will not consent to a remittitur of $9500.00. As a consequence, under the applicable article of our Code of Civil Procedure, the Court would have to order a new trial in order to bring about an amendment of this verdict.
"As I stated in the case of Marcantel v. Aetna Casualty & Surety Company, bearing No. 70,723 on the docket of this court, which is presently on appeal in the Third Circuit Court of Appeal of Louisiana, [215 So.2d 157] under the procedure of this state, whereby the Courts of Appeal review facts as well as law, the remedy provided by Article 1813 seems to be impractical. I think that in these instances the more appropriate procedure *706 for further consideration of and to remedy the award would be an appeal."
Defendant contends that, since the trial judge found that the verdict was excessive and plaintiff refused to accept the remittitur which was suggested, defendant is entitled to a new trial. LSA-C.C.P. art. 1813 is cited as the basis for that demand.
LSA-C.C.P. art. 1813 provides that "If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur." The article provides further that this remittitur or additur is to be entered only with the consent of the affected party "as an alternative to a new trial." It is apparent from the provisions of this article that some discretion is vested in the trial court in determining whether a remittitur or additur should be required as an alternative to a new trial.
In the instant suit, the trial judge found that the award was "high, considering the awards in our jurisprudence in somewhat similar cases." He, however, apparently did not feel that the verdict was so excessive that a new trial should be granted, because he did not indicate a time within which plaintiff may enter a remittitur as an alternative to a new trial, and a new trial, in fact, was not granted.
Although we think LSA-C.C.P. art. 1813 contemplates that a new trial "should be granted" under circumstances similar to those presented in the instant suit, we cannot say that the trial judge abused his discretion in refusing to grant that relief here. We conclude that there is no merit to defendant's argument that the case should be remanded for a new trial solely because the trial judge felt that the award was high and because he was informed that the plaintiff would refuse to consent to a remittitur if one should have been ordered.
Defendant contends, finally, that the award of $15,000.00 made by the jury is excessive and should be reduced.
The injuries sustained by plaintiff as a result of this accident consisted of contusions about the head, laceration of the upper lip, laceration of the forehead, spraining injuries to the lower cervical segment, contusions of the chest and sternum, lumbar spraining injuries with some peroneal hypesthesia, contusions of the left leg and dental injuries. He received prompt and adequate medical attention, including hospitalization on at least three occasions covering a total period of about fifteen days.
The treating physician released plaintiff to return to light duty on July 21, 1967, and he anticipated that by September of that year he would be fully recovered to resume his duties as an ironworker. The evidence, including the testimony of several medical experts, convinces us that plaintiff fully recovered from all of his injuries to the extent that he was no longer disabled within a period of six months after the accident occurred. He was disabled from performing his duties as a steel worker from the date of the accident until sometime in July or August, 1967.
The most serious injuries sustained by plaintiff were injuries to his teeth. These consisted of fractures of four upper front teeth, fractures of four lower front teeth, and lesser injuries to one lower tooth on the right side. He was treated for a period of approximately one month in an effort to save his fractured front teeth, but after that time it became necessary to extract the four upper front teeth and the four lower front teeth. The lower tooth on the right side which had been injured was satisfactorily repaired by filling it.
Shortly after the front teeth were extracted plaintiff was fitted with temporary partial dentures which he wore for a period of about six months. He was then fitted with permanent partial dentures for the eight teeth which had been removed. He has obtained good results from these dentures, *707 aesthetically and otherwise, although he testified that they bother him, that food gets under the dentures, that they are hard to keep clean and that they are "always popping out" and that he has to remove and clean his teeth after each meal. The evidence convinces us that the trouble which he is experiencing with his dentures is due largely to the fact that they are new and that he has not as yet become accustomed to them.
Plaintiff was 28 years of age at the time the accident occurred. He is a structural iron worker, and is a member of Ironworkers Local No. 678. He was employed at the time he was injured, and was earning $212.50 per week, including his overtime pay. The union to which he belonged was on strike from July 1, to October 10, 1967, and during that time plaintiff's earnings, if he obtained other employment, probably would have been less than they had been. Considering all of the evidence, we think plaintiff is entitled to recover for loss of wages at the rate of $212.50 per week for a period of 17 weeks, or a total of $3612.60.
Fontenot incurred medical bills amounting to $1963.54, and he sustained a loss of $100.00 in the demolishing of his automobile, that being the sum which was deductible from his collision insurance policy. His total special damages, therefore, amounted to $5675.04.
By deducting the amount of the special damages from the total award made, it becomes apparent that the jury awarded plaintiff $9,324.96 as general damages for his injuries. We agree with the trial judge that this award is "high," but we do not consider it to be so excessive as to constitute an abuse of the discretion which is vested in the jury.
For the reasons herein assigned the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.