HOOD, Judge.
Thomas J. Thayer instituted this suit for damages for personal injuries which he sustained as the result of a motor vehicle collision. The defendants are Faris J. Tanory and his liability insurer, State Farm Mutual Automobile Insurance Company. The case was tried by jury with the result that a verdict was rendered in favor of plaintiff for $20,000.00 A decree was signed in accordance with that verdict, and defendants have appealed.
Defendants contend primarily that the jury and the trial court erred in finding plaintiff to be free from contributory negligence. Alternatively, they argue that the award of damages is excessive, and that the award should be reduced or the case should be remanded for a new trial on the question of quantum.
The'accident occurred about 3:30 p. m. on January 10, 1967, at the intersection of Blandford and Florence Streets, in the City of Lafayette. Plaintiff was driving a pickup truck north on Florence, and defendant’s minor son, Joseph Faris Tanory, was driving defendant’s automobile east on Blandford. The right front part of the Tanory car struck the left front part of plaintiff’s truck, the point of impact being at about the center of the intersection.
Both streets were blacktopped, but construction work was being done on Bland-ford, and at the time of the accident there was no blacktopping on the westbound lane of that street, leaving that part of the street muddy and in bad condition. Florence was the preferred street, and ordinarily there were stop signs at the intersection warning motorists on Blandford to stop before proceeding into the intersection. Shortly before this accident, however, the stop sign on the west side of Florence, warning eastbound motorists on Blandford to stop before entering the crossing, was removed because of the construction work which was being done. At the time this collision occurred, therefore, the only traffic signal which was located at this intersection was a stop sign on the east side of Florence Street, warning westbound traffic on Blandford to stop before proceeding into the crossing. There were no stop signs warning either plaintiff or young Tanory to stop before entering the intersection.
•It had been raining earlier that day, and the streets were wet. Visibility was good, however, and there was nothing to prevent either motorist from seeing the other as they approached the intersection.
The evidence convinces us, as it did the jury, that young Tanory was negligent in failing to yield the right of way to the Thayer truck, especially since Tanory was approaching the intersection on the left of Thayer. See LSA-R.S. 32:121; State Farm Mutual Automobile Ins. Co. v. Niagara Fire Insurance Co., 183 So.2d 145 (La.App. 1st Cir. 1966). We conclude, and defendants apparently concede, that Tanory’s negligence in that respect was a proximate cause of the accident.
Defendants contend, however, that plaintiff also was negligent in driving at an excessive rate of speed as he approached and entered the intersection. They argue that his negligence in that respect was a cause-in-fact of the accident, and that he thus is barred from recovery by his own contributory negligence.. The burden rests on defendants, of course, to prove the facts on which its plea of contributory negligence is based. Fontenot v. Fidelity and Casualty Company of New York, 217 So.2d 702 (La.App. 3d Cir. 1969).
The speed limit at this intersection was 25 miles per hour. A school was located *770 about two blocks north of that crossing, and school children frequently were in that area, particularly about the time school was let out each afternoon.
Plaintiff Thayer was driving at a speed of 30 to 35 miles per hour as he approached the intersection. He observed the Tanory car approaching from his left when he was about 175 feet from the crossing, and when Tanory was from 275 to 300 feet from it. He estimated that Tanory was driving at a speed of only 5 or 10 miles per hour at that time. Thayer stated that he then directed his attention toward the crossing to see if any school children were near it, and he did not observe the Tanory car again until Thayer was from 50 to 75 feet from the intersection. He noticed at that time, however, that Tanory had accelerated to a speed of 45 to 50 miles per hour, and that he would not be able to stop before he reached the crossing. Plaintiff testified that he immediately applied his brakes hard, and that he almost brought his car to a stop before the accident occurred. The evidence shows that plaintiff traversed from one-third to one-half the distance across the intersection before he was struck.
The vehicles collided with considerable force. The blow caused plaintiff’s truck to be overturned and knocked a distance of about 66 feet east of the point of impact. The Tanory car came to rest northeast of the intersection against a house. Plaintiff’s truck left heavy skid marks about 24 feet long leading up to the point of impact. The Tanory car left no skid marks, and the driver of that car concedes that he did not apply his brakes before the cars collided.
Our Supreme Court has held that the violation of a safety measure is negligence per se, and that “this negligence is actionable if it was a legal cause of the collision.” Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
The ordinance limiting the speed of motor vehicles to 25 miles per hour on these intersecting streets was a safety measure, and we agree with defendants that a violation of that ordinance constitutes negligence per se. We cannot agree with defendants, however, that Thayer’s negligence in that respect was a cause-in-fact, or a legal, proximate or contributing cause of the collision.
In the Dixie Drive It Yourself Case, supra, the Court said:
“Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. * * A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence of the driver of the R C Cola truck, then his negligence was not a substantial factor or cause-in-fact.”
And, in Vidrine v. General Fire and Casualty Company, 168 So.2d 449 (La.App. 3d Cir. 1964), we said, “Negligent conduct ‘is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it’; while, on the other hand, it is not a substantial factor (or cause-in-fact) ‘[i]f the collision would have occurred irrespective of the negligence.’ ”
Defendants point out that according to a stopping distance chart in Blashfield, Cyclopedia of Automobile Law and Practice, a motor vehicle can be stopped within a distance of 57 feet while being driven at a speed of 25 miles per hour, whereas stopping distances of from 73 to 94 feet are required for vehicles being driven at speeds of 30 to 35 miles per hour. They argue that since plaintiff, while driving 30 to 35 miles per hour, almost brought his truck to a stop before the accident occurred, he obviously could have stopped completely in time to avoid a collision if he had been driving within the legal speed limit of 25 miles per hour.
We are unable to agree with defendants in that argument. The speed chart to which they refer is not in evidence. But *771 even if we should rely on it, as defendants do, the evidence does not establish that plaintiff was more than 50 feet from the intersection when he first determined that Tanory was not going to stop, and thus it does not show that plaintiff could have avoided the accident after that discovery was made, even if he had been driving within the legal speed limit.
A motorist approaching an uncontrolled intersection from the right is entitled to assume that traffic approaching from his left and reaching the intersection at approximately the same time will yield the right of way to him. And, the motorist on the right can indulge in that assumption until he sees or should see that the motorist approaching from the left has not seen his vehicle or is not going to observe the law. Berry v. Festervan, 215 So.2d 398 (La.App. 2d Cir. 1968); Jewell v. Aetna Casualty and Surety Company, 200 So.2d 697 (La.App. 2d Cir. 1967).
In the instant suit we find that Thayer exercised reasonable care as he approached this intersection. He observed the Tanory automobile when it was at least 275 feet from the intersection, and at that time he determined that it was being driven at a very slow rate of speed. There was nothing to indicate to plaintiff that a collision might occur at that time, and plaintiff had the right to assume that Tanory would observe the speed limit as well as plaintiff’s right of way. We find no negligence on plaintiff’s part in his failure to look at the Tanory vehicle again until he reached a point within 50 to 70 feet from the crossing.
The evidence convinces us, as it apparently did the judge and jury, that the accident would have occurred even though plaintiff had been driving at the legal speed limit of 25 miles per hour. His negligence in driving at a speed slightly in excess of that limit, therefore was not a substantial factor in bringing about the collision. It was not a cause-in-fact, or a proximate or legal cause of the accident. Since the evidence fails to show actionable fault on the part of plaintiff, we conclude that he is not barred from recovery because of contributory negligence.
The record shows that plaintiff’s treating physician referred him to Dr. John Jackson, a neurosurgeon, and that Dr. Jackson examined plaintiff to determine if he had sustained a disc injury as a result of the accident. Dr. Jackson was not called as a witness at the trial, and no explanation was given for the failure to call him. The trial judge refused defendants’ request that a special charge be given to the jury that “Failure of plaintiff to call Dr. Jackson or to explain such failure raises a presumption that his testimony would not be favorable to plaintiff’s case.”
We agree that the failure of plaintiff to call Dr. Jackson, or to explain why he wasn’t called, creates a presumption that the doctor’s testimony would be unfavorable to plaintiff. Richoux v. Grain Dealers Mutual Insurance Company, 175 So.2d 883 (La.App. 3d Cir. 1965). In this instance, however, the treating physician testified that he received a report from Dr. Jackson after the examination had been completed, and the essence of that report was:
“Neurologically he thought he was all right and that he did not have a disc problem and that he did not have any evidence of any intracranial pathology.”
This testimony indicates, at least as clearly as the above mentioned legal presumption would, that Dr. Jackson’s testimony would have been unfavorable to plaintiff, and defendants thus have not been prejudiced by the failure of the trial court to give the requested charge to the jury. We find no merit to defendants’ request that the case be remanded for a new trial on the question of quantum.
 Plaintiff is 39 years of age. He has been a meter reader for Gulf States Utilities Company for 20 years. His duties require him to ride in an automobile *772 from 10 to 30 miles per day, and to get out of the car frequently and walk to the electric meters which he reads.
As a result of the accident plaintiff sustained a macerated type laceration around the left eye and forehead which extended to the skull; a linear small non-displaced fracture of the fifth metatarsal bone of the right foot; a stellate type fracture of the right scapula; a cervical sprain or a fibromyositis of the paravertebral muscles of the cervical spine; and a brain concussion. He was hospitalized for observation for two days immediately after the accident occurred. Sixteen months later, he was hospitalized for about six days for purposes of examination.
The laceration around plaintiff’s left temple and forehead healed completely without complications, but it left a scar which his treating physician described as “confined to the left eyebrow and the left forehead.” The fracture of the metatarsal bone of the right foot healed completely within a few weeks, without any residuals or pain, but plaintiff testified that about five or six months after the accident occurred his left foot began to pain him, and that he has suffered pain in his left foot since that time. The fracture of the right scapula has healed, but apparently a nerve has become entrapped in the scar tissue which causes plaintiff to suffer nondisabling pain in his shoulder after carrying heavy weights. The medical evidence, although conflicting, indicates that the injury to his neck or cervical spine is permanent and will continue to cause him to suffer some pain upon movement of the neck, but that pain also is nondisabling. The brain concussion caused him to experience dizziness occasionally within a few months after the accident. Plaintiff testified that he developed pain in his hips and left elbow several months after the accident occurred, but we are not convinced that there is any causal connection between this complaint and the accident.
Thayer was confined to his bed for about two weeks after the accident occurred. He returned to work after that two week period, however, and he worked from one to six hours a day for the next three or four weeks. About five or six weeks after the accident occurred, however, he returned to his full employment, and he has been working continuously since that time performing his duties as a meter reader for Gulf States Utilities Company. He has received his full salary during all of that time. The evidence shows that he incurred medical expenses amounting to the sum of $547.20.
The jury awarded plaintiff the sum of $20,000 as damages. We have carefully reviewed all of the evidence relating to the nature and extent of plaintiff’s injuries and we have considered the fact that the facial scars and some of the injuries which plaintiff sustained are of a permanent nature. We are aware of the fact that the jury has much discretion in determining the amount to be awarded as general damages in a case of this kind, but we feel that in this instance the award made to plaintiff is manifestly excessive. In our opinion an award of $12,000 for all of the injuries, including pain and suffering, sustained by plaintiff as a result of the accident, plus the additional sum of $547.20 for medical expenses, is fair and adequate.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount of the award made to plaintiff from the sum of $20,000 to the sum of $12,547.20. Except as herein amended, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellee.
Amended and affirmed.