420 So.2d 214 (1982)
Joanlyn McELROY, Widow of Charles McElroy Individually and for the Benefit of Her Minor Children Charles J. McElroy, III, David J. McElroy, Tammy L. McElroy and Brian P. McElroy
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 12822.
Court of Appeal of Louisiana, Fourth Circuit.
September 2, 1982.
Writ Denied November 12, 1982.
*215 Owen J. Bradley, Michael R. Guidry, New Orleans, Nolan Edwards, Crowley, for plaintiffs-appellants.
William F. Bologna, Colvin G. Norwood, Jr., McGlinchey, Stafford & Mintz, New Orleans, for defendants-appellees.
Before KLEES, CIACCIO and BYRNES, JJ.
BYRNES, Judge.
This appeal arises from a wrongful death action brought by the wife and children of the decedent, Charles McElroy, resulting from a December 10, 1971 automobile accident. Decedent's family sued Ford Motor Co., claiming that the decedent died as a result of a design defect which allowed the door of the car in which he was riding to fly open, thus ejecting him. Judgment was rendered in favor of Ford Motor Co., and it is from this adverse judgment that Mrs. McElroy and her children appeal.
The accident occurred on Louisiana Highway 23 in the early afternoon of December 10, 1971. It was raining at the time. Mr. McElroy and a co-worker were returning from work and were proceeding in a northerly direction on Louisiana Highway 23. The car they were traveling in was a 1967 Ford 4 door Sedan. The speed limit on Louisiana 23 at the time was 60 miles per hour. According to Mr. Perez, the passenger in the McElroy vehicle, a dog crossed the highway in front of the vehicle and Mr. McElroy applied his brakes to try and avoid the dog. The car went into a skid and was struck in the side by a following vehicle, a large refrigeration truck. The force of this impact flung the McElroy vehicle off the highway. Both McElroy and his passenger were ejected from the vehicle. Mr. McElroy never regained consciousness and died in the hospital approximately 18 days after the accident. The passenger survived.
The evidence in the record is quite clear that Mr. McElroy's injuries were sustained after he was ejected from the vehicle. The crux of appellant's case lies in their contention that the ejection was caused by a design defect which rendered the door latch mechanism unfit for the purpose for which it was designed, i.e. to keep passengers in the vehicle. Ford maintains that the door latch mechanism was more than adequate, but due to the severity of the collision nothing further could have been done to prevent the ejection.
The jury's verdict was in the form of answers to interrogatories submitted to them. The first interrogatory asked, "Did Mr. McElroy sustain his fatal injury while inside the automobile?" The jury answered "no" to this question. It then answered "yes" to the second question, "Did Mr. McElroy sustain his fatal injury after being ejected from the automobile?" The jury answered the next question, which asked "Was the defect in the design of the Ford automobile a cause in fact of Mr. McElroy's fatal injury?" in the negative and, in accordance with instructions given in the interrogatories did not answer any further questions. The jury's verdict was unanimous on all questions. On motion of defendant the trial judge adopted the jury's verdict as the judgment of the court.
Appellants have cited five specifications of error committed by the trial judge. The first alleged error concerns instruction given by the trial judge to the jury that Mrs. McElroy's sale of the automobile involved in the law suit gave rise to a presumption that, had the automobile been introduced into evidence, it would have been unfavorable to the plaintiff's case. The second error *216 urged by appellants is that the trial judge erred in allowing Ford to introduce at trial evidence that the McElroy Ford was equipped with a lap seat belt and that McElroy was not wearing this seat belt at the time of the accident. The third specification of error maintains that the trial judge committed an abuse of discretion in granting Ford Motor Company's motion in limine to exclude Ford test B-2117 from evidence. The fourth specification of error is that the trial judge erroneously allowed the Ruiz' photographs of the McElroy vehicle into evidence without the necessary foundation being laid. As an alternative specification of error, the appellants urge that the jury conclusion in this case, that there was no defect in the design of the Ford automobile, is manifestly erroneously and therefore reversable under this court's fact finding authority as defined in Arceneaux v. Domingue, 365 So.2d 1330 (La.1979) and Canter v. Koehring, 283 So.2d 716 (La. 1973).

ASSIGNMENT OF ERROR I.
Appellants' assignment of error No. 1 maintains that the Judge was in error in instructing the jury that Mrs. McElroy's disposal of the automobile involved in the collision gave rise to a presumption, that had it been introduced as evidence, it would have been unfavorable to her case. The trial judge's instruction to the jury on this point reads as follows: "Mrs. McElroy's sale of the automobile involved in this law suit, with the approval of her attorney, gives rise to a presumption in the law, that had the automobile been introduced as evidence it would have been unfavorable to the plaintiff's case." Plaintiff, in support of the contention that this charge was inappropriate, cites the case of Babineaux v. Black, 396 So.2d 584, at 586 (La.App. 3d Cir. 1981) wherein the court states:
"It is true that under a long line of jurisprudence, the failure of a litigant to produce evidence within his reach raises the presumption that the evidence would have been detrimental to his case. Martin v. T. L. James & Co., Inc., 237 La. 633, 112 So.2d 86 (1959); Rodriguez v. Northwestern National Insurance Co., 358 So.2d 1237 (La.1978); Tubesales v. Champion Machine Works, Inc., 281 So.2d 459 (La.App. 4th Cir. 1973). However, this presumption is not applicable when the failure to produce the evidence is explained. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Veillon v. Sylvester, 174 So.2d 189 (La.App. 3d Cir. 1965)."
The law is quite clear. Prior to the disposition of the car, plaintiff, relying on another theory of action, had the brakes disassembled and inspected. With litigation pending, it was unwise for the plaintiff to get rid of the vehicle. However, her explanation that she did it simply because it upset her every time she saw it in her driveway was brought to the jury's attention. This court can sympathize with plaintiff's desire to have the car out of her sight, but it should not have been destroyed. This discussion was amply placed before the jury during the course of the trial. This jury charge was not a directive to the jury that failure to introduce the evidence was prima facie evidence of no negligence on the part of Ford. It is conceivable that this charge could have unduly influenced the jury in a different situation. However, it is abundantly clear from the record before us that this is not the case here. The testimony bears out the fact that the jury was fully apprised of the circumstances involved in the disposal of the vehicle. Enough evidence was placed before the jury to lead this court to find that the charge in no way unduly prejudiced appellants' rights. Appellants' first specification of error has no merit.

ASSIGNMENT OF ERROR II.
Appellants' second assignment of error is that the trial judge was in error in allowing Ford to introduce at trial evidence that the McElroy Ford was equipped with a lap seat belt and that Mr. McElroy was not wearing it the time of the accident. Appellants maintain that the trial judge's charge to the jury was in error:

*217 "You must consider the automobile as a whole in order to determine whether it was improperly designed. You must take into account all the features designed in the automobile for the purpose of keeping passengers inside the car in the event of a collision."
Appellants maintain that this charge is erroneous inasmuch as Louisiana jurisprudence clearly states that there is no duty to wear a lap seat belt, and the failure to wear such a belt or other restraining devices does not constitute contributory negligence on the part of an injured party.[1]See: Myles v. Lee, 209 So.2d 533 (La.App. 2nd Cir. 1968); Lawrence v. Westchester Fire Insurance Co., 213 So.2d 784 (La.App.2d Cir.), writ den. 215 So.2d 131 (La.1968); Fontenot v. Fidelity and Casualty Co. of New York, 217 So.2d 702 (La.App. 3d Cir. 1969); Williams v. Chrysler Motor Co., 271 So.2d 551 (La.App. 1st Cir. 1973); Williams v. Harvey, 328 So.2d 901 (La.App. 4th Cir. 1976).
Ford maintains that this jury charge in no way attempts to plead contributory negligence on the part of McElroy. Ford contends instead that the charge attempts to instruct the jury that they must consider the design of the automobile as a whole in determining whether or not there was a defect in the vehicle.
Appellants claim that Ford by this argument is trying to do what otherwise they would not be permitted to do, i.e. plead contributory negligence on the part of the decedent for not wearing the seat belt.
We disagree. Upon examining the interrogatories presented to the jury this court notes that the jury found that Mr. McElroy sustained his fatal injuries as a result of ejection from the vehicle, and that this ejection was in no way due to the design of the vehicle. From the evidence presented to the jury it is clear that the jury did not in any way pass on the question of contributory negligence. Ford's defense to the allegations of design defect was that the vehicle was designed as safely as possible. Ford maintains that the design of the vehicle as a whole, including all of the restraint devices, was such that no defect existed. In this light, evidence of the existence of seat belts was properly before the jury.

ASSIGNMENT OF ERROR III.
The third assignment of error urged by appellants is that the trial judge committed an abuse of discretion in granting Ford's motion in limine to exclude Ford test B-2117 from evidence. We conclude that the trial judge did not abuse his discretion by excluding the test.
Ford test B-2117 was conducted by Ford to determine the strength of the hinges and latch mechanisms of 1967 Ford/Mercury model car doors. Plaintiff maintained that test B-2117 was admissible for two purposes. First the test allegedly shows that the 1967 Ford doors could be opened by the pulling of the actuator rod caused by impact deformation of the door, thus putting Ford on notice that a defect existed. Second, plaintiff asserts that the photographs accompanying the test could be used by plaintiff to determine the reasons for the McElroy door opening. This court, upon a careful review of the proffer submitted by plaintiff, containing both the test and deposition of two of the engineers involved in the test, has concluded that the trial court did not commit manifest error in refusing to admit the test.
Upon reviewing the testimony at trial, we conclude that Ford test B-2117 has no bearing on plaintiff's theory of a design defect involving the actuator rod. Ford test B-2117 was not set up to test the design of the actuator rod, but was designed to test the latch mechanism. The conditions under which the Ford test was conducted were not similar to those encountered in the McElroy collision. The design of the test vehicle and door was in no way similar to the design of the McElroy vehicle and door. The test door was significantly altered for the purposes of a test unrelated to the actuator rod. The actuator rod did in fact bend and cause the door to open, but it was removed since its deflection hindered *218 the true purpose of the test. No inquiry into its failure was explored by the test. We therefore conclude that nothing in the Ford test served to put Ford on notice of any alleged design defect in the actuator rod causing it to fail under conditions encountered in the McElroy collision. It appears from the test report that the failure of the actuator rod was incidental to this test. No reason for its failure was ever fully explored by this test. For this reason we find that the trial judge was correct in not admitting Ford test B-2117 as it would no doubt have confused the jury. The test is not relevant or material to the case.
Both appellee and appellants cite in support of their respective positions, the case of Hebert v. Brazzel, 403 So.2d 1242 (La.1981). We believe that the correct interpretation of the case, presented to this court by appellee, is that the trial judge is allowed to exercise reasonable discretion in determining each test and its admissability based upon the particular merits of the case. In Hebert, the differences in the test were such that they rendered the test not entirely identical to the accident it was compared with. These differences, however, were not of such a nature as to impair the usefullness or the probative value of the test. This is not the case here, insofar as the differences in Ford test B-2117 were such as to render the test inconclusive as an approximation of the forces which lead to the un-latching of the door in the actual accident.

ASSIGNMENT OF ERROR IV.
Plaintiff's next assignment of error urges that the trial judge erroneously allowed the Ruiz photographs of the McElroy vehicle into evidence without the necessary foundation being laid for their admission. Ruiz was an investigator, who died approximately two months before trial. Plaintiffs maintain that the Ruiz photographs, taken of the car after it was towed from the scene of the accident, do not accurately reflect the condition of the car at that time. They contend that certain changes in the car, undoubtedly caused by the towing of the vehicle from the accident site, were apparent in the Ruiz photographs when compared with police photographs taken at the site. Plaintiffs maintain that the only accurate picture of the vehicle is shown in the state police photographs.
In Launey v. Traders and General Insurance Co., 169 So.2d 757 at 759 (La.App.3d Cir. 1964) the Third Circuit Court of Appeal stated with regard to photographic evidence:
"The general rule is that photographs are admissable only if verified or authenticated as accurate by extrinsic evidence and that the trial court has some discretion in determining the sufficiency of the preliminary proofs offered to identify or authenticate the photograph. 32 C.J.S. Evidence Section 715, 716, pp. 1006, 1018; 20 Am.Jur. `Evidence', Section 730 (page 609). As these encyclopedia references also show, this authenticating evidence must be to the effect that the photograph is a substantially true and faithful representation esentation of the place, person, or subject which it purports to portray. See Fuqua v. Martin, La.App. 2 Cir., 40 So.2d 404, cf., Greeves v. S. H. Kress & Co., La.App.Orl., 198 So. 171. If the photograph is not substantially correct but is nevertheless admissable because sufficiently correct to be helpful, its verification may consist of explaining the inaccuracies. 32 C.J.S. Evidence Section 715 at pp. 1012-1013; 20 Am.Jur. `Evidence', Section 730-734 at pp. 609-613; Annotation, Photographs-Authentication, 9 A.L. R.2d 899. See also Annotation, Evidence-Photographs and Photostats, 72 A.L.R.2d 308.
In the authentication, `The photograph may be verified by oath of the photographer who took it; and, indeed, it has been said that this is the better practice. However, it is not necessary to produce the photographer; sufficient verification may be furnished by the testimony of any competent witness who has sufficient knowledge to testify that the photograph fairly represents what it purports to represent.' 32 C.J.S. Evidence Section 715 *219 at p. 1014. Or, as stated at 20 Am.Jur. `Evidence', Section 730 at p. 610, `The authenticity of a photograph may be established by any witness who is familiar with the scene, object, or person portrayed or is competent to speak from personal observation. Thus, proof of the accuracy of a photograph of a person may be made by the testimony of one who was familiar with the appearance of the person at the time the photograph was taken.' " Cf., State v. Goins, 232 La. 238, 94 So.2d 244, syllabus 5. See also Annotation, 9 A.L.R.2d 899 (cited above) at Section 12, p. 923.
There was testimony in the record that the pictures were taken by Mr. Ruiz while Mrs. McElroy looked on. The question was asked by Mr. Norwood, the attorney for Ford, "While the vehicle was in your driveway was it subject to damage that you know of, run into or bumped or further destroyed?" Mrs. McElroy, answered "No." This question was asked subsequent to an objection by appellants attorney wherein he stated for the record "We object to the relevancy unless they show that there is no change in the motor vehicle from the time of the accident and the time the photographs were taken." The court stated that, "That will be a question of fact for the jury to determine."
We have before us two sets of pictures, one set being the state police pictures taken at the scene of the accident and the other being pictures taken of the car by Ruiz. It was stated that no further damage occurred to the automobile from the time the state police pictures were taken until Ruiz took his pictures. The only differences are those alleged by plaintiff as occurring because of the towing. Plaintiff urges that it is incumbent upon the defendant, in offering the pictures, to lay a foundation showing that the pictures properly represent the vehicle as it appeared after the accident. We agree with the trial court that the alleged differences in the two sets of pictures would have to be resolved by the jury. In light of the testimony in the transcript we find that the trial court properly allowed the Ruiz pictures to be presented to the jury. The foundation was properly laid.

ASSIGNMENT OF ERROR V.
The appellant's final contention is that the jury committed manifest error when it found that a defect in the design of the deceased's vehicle was not a cause in fact of his injuries. The scope of appellate review of the facts of any case was explicitly set forth by the Supreme Court in Arceneaux v. Dominque, supra, at 1333:
"The Constitution of 1974 provides in Article 5, Section 10(B):
`(B) Scope of Review. Except as limited to question of law by this constitution or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts.'
As an aid to the exercise of the appellate function of review of facts in civil cases, we attempted to explain in Canter v. Koehring, supra, without great detail, the appropriate standard. We said that `even though the appellate court may feel that its own evaluations and inferences are as reasonable,' it should not disturb reasonable findings of the trial court when there is conflict in the testimony. We prefaced this observation: `When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.' 283 So.2d 716, 724 [Emphasis added].
We did not forsee that this explanation would be misunderstood to mean that: `There is no manifest error when the evidence before the trier of fact furnishes a reasonable basis for its finding.' We said the appellate court should not disturb this factual finding in the absence of manifest error. The difference is important. `Manifestly erroneous,' in its simplest terms, means `clearly wrong.' We said then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate *220 review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be further determination that the record establishes that the finding is not clearly wrong [manifestly erroneous]."
The special verdict of the jury consisted of answers to three interrogatories. The first two interrogatories deal with the ejection of Mr. McElroy. Specifically they ask where his fatal injury occurred. The jury's finding was that the injury occurred after McElroy was thrown clear of the automobile. This conclusion is amply supported by the record. Expert medical testimony supported the plaintiff's contention that Mr. McElroy did indeed sustain his fatal head injuries solely because of his ejection from the automobile. The only other interrogatory answered by the jury in their special verdict concerned the design of the Ford automobile and whether it was a cause in fact of Mr. McElroy's fatal injuries. The jury answered this interrogatory in the negative. The record is replete with depositions, video tape depositions, and physical evidence, including photographs and actual lock assemblies of a representative car door. Also included in the exhibits are three representative car doors. The appellants, in requesting a de novo factual determination by this court, have made all of this physical evidence available to the court. Upon a review of this evidence, as well as the trial transcript, this court can come to no other conclusion but that there was no manifest error in the jury's determination of the issue of the alleged design defect. We find a more than reasonable basis for the jury's finding of fact. It is clearly supported by the evidence at hand. Although reasonable men may differ in this finding, in light of the evidence presented, this factual determination should not be disturbed by this court.
For the reasons above stated the trial court judgment is affirmed with all costs of this appeal assessed to appellants.
AFFIRMED.
NOTES
[1] At the time of the accident, Louisiana was still using a contributory negligence standard.