[No. 29536.   Department One.   March 15, 1945.]

W. M. LEUTHOLD *et al., Respondents,* v. ROY GOODMAN, *Appellant.*[1]

[1]Reported in 157 P. (2d) 326.

*Witherspoon, Witherspoon & Kelley,* for appellant.

*Edge, Davenport, Keith & dePender,* for respondents.

STEINERT, J.—This was an action for damages for personal injuries and property impairment resulting from a collision involving two motor vehicles, at a point within a street intersection. Plaintiffs, composing a copartnership, were the owners of a Lincoln Zephyr sedan which was struck by an International delivery truck owned by the defendant Roy Goodman and operated at the time of the accident by his employee, John Prater, who was also a defendant in the proceedings before the superior court. The cause was tried to the court without a jury. Findings were made and judgment was entered in favor of the plaintiffs

against both of the defendants. The defendant Goodman alone has appealed. We shall hereinafter refer to the plaintiff W. M. Leuthold as though he were the sole respondent; to the defendant Roy Goodman, as appellant; and to the driver, John Prater, by name or as defendant.

Two questions are presented upon the appeal: (1) whether Prater, the driver of appellant's delivery truck, was within the scope of his employment in driving the truck at all on the day of the accident; and (2) whether, in driving the truck on that day, Prater so far deviated from his necessary course of travel as to place him wholly outside the scope of his employment at the time of the collision.

Appellant is a piano dealer, having his place of business at 909 Riverside avenue, in the city of Spokane. Defendant, John Prater, is an experienced piano workman and truck body builder, and for a number of years prior to the time here involved had also been in the transfer business. From March, 1942, to the time of the accident he was employed by the appellant as a general handy man about the latter's store, particularly to work on piano cases, deliver pianos, and keep the delivery truck in repair. Prater's home, located at 1718 Maxwell avenue, was about twenty-two blocks northwesterly from appellant's place of business.

Sometime prior to the day of the accident, appellant had authorized and employed Prater to change the construction of the body on the delivery truck so as to make it more suitable for the loading and transportation of pianos. This work was to be done on Sundays at Prater's home, and for such employment he was to receive extra compensation. A part of this construction work was done by Prater on the Sunday preceding the day of the accident, and on the following Saturday, which was the day before the occurrence of the collision, he was again authorized and directed by appellant to take the truck home that evening in order to work on it the next day.

The evidence discloses, without substantial dispute, that on that same Saturday appellant directed Prater to remove a quantity of rubbish from the basement of the store, load

it on the truck, and haul it to a "free public dump" located about seven miles east of the store, or about nine miles east of Prater's residence. Appellant did not give Prater any directions or impose upon him any limitations as to the time, manner, or route to be taken in hauling away the rubbish, except that it was to be removed from the basement on that day. Prater loaded the rubbish onto the truck that afternoon and at about six o'clock, which was his usual quitting time, left the store, with the loaded truck, and went to his home.

Early the next morning, Sunday, Prater at his place of residence loaded several of his own cans of garbage onto the truck, then drove to the public dump, where he deposited the rubbish and garbage, and thereupon started on the return trip toward his home, intending there to complete his work on the body of the truck. On the return trip, he drove along the usual course, westerly on Mission avenue, as far as Division street which runs north and south. Mission avenue extends several blocks westerly beyond Division street, then terminates, and does not appear again as a continuous open street until its projected course reaches Cedar street, at a point about three blocks east and one block north of Prater's residence located on Maxwell avenue near the corner of Ash street.

Had Prater, on arriving at the intersection of Mission avenue and Division street, proceeded toward his home by the usual, best, and shortest route, he would have turned south at that intersection, driven to Boone avenue, a distance of three blocks, then turned west on Boone avenue, driven as far as Ash street, a distance of approximately eighteen blocks, then turned north on Ash street and driven three blocks to his home, covering in all about twenty-four blocks, or approximately two miles, in that portion of the trip.

Instead of taking that course, however, Prater turned north at the intersection of Mission avenue and Division street and proceeded a distance of five blocks to Knox avenue, where he intended to turn west and go to the home of his daughter residing one block west of Division street.

His purpose in taking that route was to pick up his daughter and grandchild and take them to his home for dinner on that day.

There are several through streets leading respectively west and south from the intersection of Knox avenue and Division street to Maxwell avenue and Ash street, where Prater lived, although, as appears from the evidence, that course would have been six blocks longer than the route by way of Boone avenue, as above described.

Arriving at the intersection of Division street and Knox avenue, Prater turned to his left to cross the avenue, and in doing so propelled the truck against the Lincoln Zephyr sedan which the respondent was then driving southwardly along Division street across the intersection. As a result of the collision respondent sustained serious personal injuries and his car was measurably damaged.

On this appeal there is no dispute as to the fact of Prater's negligence, nor is there any contention made here that respondent was contributorily negligent. The only questions which are presently raised relate to the scope of Prater's employment on the day and at the time of the collision.

The rule of law is well settled that the master is liable for the negligence of his servant when committed in the execution of the master's business, within the scope of the servant's employment. *George v. Carstens Packing Co.,* 91 Wash. 637, 158 Pac. 529; *Carlson v. Collier & Son Corp.,* 190 Wash. 301, 67 P. (2d) 842; *Rice v. Garl,* 2 Wn. (2d) 403, 98 P. (2d) 301; 5 Am. Jur. 709, Automobiles, § 373; 42 C. J. 1094, 1099, Motor Vehicles, §§ 855, 861. The foregoing authorities all relate to the operation of motor vehicles.

With reference to the first question here under consideration, it is clear from the evidence that Prater was acting within the scope of his employment in using the truck for the purpose of delivering the load of rubbish to the public dump and making a return trip to his home, where the intended work upon the truck body was to be performed on that same day. Appellant had authorized Prater to take possession of the truck on the evening before, had instructed him to transport the load of rubbish to the

dump, and had employed him to continue with the work of reconstructing the body of the vehicle while in his possession over the week end. The hours during which Prater was expected to make the fourteen or sixteen mile trip to the public dump were left entirely to his own convenience and discretion, and the mere fact that Prater added to the load of rubbish from the store a quantity of garbage at his home in no way legally changed the scope of his employment or lessened his authority with reference to making the Sunday trip.

The second question, which relates to Prater's alleged deviation from the scope of his employment shortly before the happening of the accident, is the determinative question in this case.

It is the generally accepted rule that where a servant or employee in charge of his master's or employer's automobile engages upon a mission in furtherance of his master's business, but in the course of such engagement completely forsakes the purpose of his employment and enters upon a mission entirely his own, and while so engaged negligently injures the person or damages the property of another, the master or employer is not thereby rendered liable to the injured party or to the owner of damaged property.

In 5 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 175, § 3029, it is stated:

"The general rule is that a servant in charge of his master's automobile, who, though originally bound upon a mission for his master, completely forsakes his employment and goes upon an errand exclusively his own, and while so engaged commits a tort, does not thereby render the master answerable for such tort under the rule of respondeat superior."

The general rule is similarly expressed in 4 Berry, Automobiles (7th ed.) 617, § 4.369.

In *Savage v. Donovan*, 118 Wash. 692, 204 Pac. 805, we followed that rule, and, after reciting the peculiar facts of that case, stated:

"In cases of this general kind a deviation in the line of travel is often troublesome in the determination of essential

and ultimate facts, but never so if it be true, as here, that the deviation is marked and continuous and in no way called for in the execution of the master's business, but indulged in only for the personal pleasure of the servant."

We shall refer again to this case a little later.

■ The rule as above stated is easily understood and its acceptance as a guide to the solution of cases of this general kind is almost universal. The difficulty comes about in the application of the rule to peculiar sets of facts. In the process of applying the rule with respect to the departure of a servant from the course of his employment, two important, though not exclusive, factors should be considered: (1) the extent of the servant's deviation, in terms of distance, from the direct route, or from the strict course, of his duty, and (2) the nature and purpose of the deviation and the relation or connection between the particular affair of the servant and the main affair of the master.

With respect to the first factor, a due sense of proportions must always be preserved. A side errand of but a few blocks from a main trip of several miles, may well be considered, under the circumstances of a given case, as constituting only a slight deviation and be insufficient to take the servant outside the scope of his employment, in the sense that the master will not thereby be relieved of responsibility for the negligence of the servant while still engaged upon the side errand. On the other hand, a side errand of the same extent, departing from a main trip of a block or less, may be held to be, under another set of circumstances, a radical departure from the servant's scope of employment and consequently may relieve the master from liability for the tortious act of the servant while on such errand. Manifestly, no exact rule of measurement in terms of distance can be formulated or held to govern all cases; each case must be considered and determined in the light of its own peculiar facts.

With respect to the second factor above mentioned, the question is largely one of the degree of departure from the servant's line of duty. If the deviation from the essential purpose of the servant's employment is but slight, or for

a very brief period of time, or is not unusual, or, in the absence of any express instructions to the servant, could logically be said to be within his implied authority, or if the deviation, though for some purely personal reason of the servant, still retains some discernible connection with the affairs of the master or with the authorized duty of the servant, the relation of master and servant will not ordinarily be held to have been suspended or the liability of the master terminated. On the other hand, if the departure is wholly independent in character, or is indicative of an utter abandonment of the servant's employment, or if the departure retains no reasonable connection with the servant's authorized course of duty, the master may be absolved from liability for the acts of the servant committed during the interim of such departure. For the same reason as that given above, no specific formula can be prescribed for the decision of all cases, regardless of the existing circumstances, but each case must be determined upon its own particular facts.

Turning to the situation presented by the case at bar, we note the particular facts and circumstances connected therewith. The distance from the intersection of Mission avenue and Division street, by way of Boone avenue, to Prater's home was approximately two miles. The distance between the same two points by way of Knox avenue was six blocks longer. If we consider the round trip between those two terminal points, the deviation would be six blocks in approximately four miles. If we view the trip as one between the public dump and Prater's home, the deviation would amount to only six blocks in a trip of nine miles, or the same extent of deviation in a round trip of eighteen miles. Whether we consider the shortest or the longest of these distances as constituting the particular trip, the deviation is relatively only slight.

It is also to be observed that whichever of the two courses Prater had taken from the intersection of Mission avenue and Division street, on the return trip, he would have been proceeding toward, and in the general direction of, his home, in completion of a journey wherein he had performed

an act within the scope of his employment, in that he had hauled the load of rubbish to the public dump; at the same time, and by the selection of either route, he would have been proceeding to the place of his ultimate objective, where he was to perform work upon the truck, that work also being within the scope of his employment.

It could hardly be contended that it would have been of any concern or interest to the appellant whether, upon the particular occasion, Prater had chosen the one route or the other, and it is not to be supposed, in the absence of any showing to the contrary, that had appellant known beforehand that Prater intended to take the Knox avenue route in order to pick up his daughter and grandchild, appellant would have made any objection thereto. The errand was not an unusual one, and of itself involved no greater risk than that previously incurred by Prater in driving from his home over the Boone avenue route or than that which he would have incurred had he returned to his home over the same route. The extra time involved in taking the longer route would have been but a very few minutes, and there is nothing to indicate that it would have materially interfered with the work to be done later.

The mere fact that in making the deviation Prater derived some personal benefit therefrom does not alter the legal consequences, inasmuch as he was still engaged in performing a duty within the scope of his employment and was necessarily returning to the place where another duty, likewise within the scope of his employment, was to be performed by him. The law upon that phase of the matter is succinctly stated in 1 Restatement of the Law of Agency 529, § 236, as follows:

"An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person."

In Comment (b) under that section appears this statement:

"The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to

any appreciable extent, the master is subject to liability if the act otherwise is within the service, as where the servant drives rapidly, partly to deliver his master's goods, but chiefly in order that he may terminate his day's work or to return the vehicle to the master's premises. So also, the act may be found to be in the service where not only the manner of acting but the act itself is done largely for the servant's purposes. Thus, where the servant desires to make a brief detour of his own and for the purpose of expediting such trip places the employer's goods by the roadside, intending to pick them up later, the act of so placing them may be found to be within the scope of employment."

In 5 Am. Jur. 714, Automobiles, § 376, the general law, as developed by judicial decision, is summarized as follows:

"While, as stated in the preceding section, the owner of an automobile is not liable for injuries or damages caused by the negligent operation of his automobile while it is being used by an employee for his own business or pleasure, the servant must have abandoned and turned aside completely from the master's business, to engage in some purpose wholly his own, before the master ceases to be liable for his act; it is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from, and an abandonment of, his master's business. A slight deviation by the servant in charge of a motor vehicle, for his own purposes, when he is on business for his master, does not affect the liability of the master for an injury resulting from the negligent operation of the automobile by the servant. This rule that a slight deviation will not take the servant out of the master's business so as to relieve the latter from liability for injuries and damage caused during such deviation has been applied in a great variety of situations. The fact that the employer [employee] may, to serve some purpose of his own, deviate a few blocks out of his way or choose a different way back, even though it is not the most direct route, does not, as a matter of law, constitute an abandonment of the master's work. But if the driver, without authority, makes a marked deviation or goes a considerable distance off from his customary route on an excursion of his own, for no purpose of his employer, the master may be absolved from liability for his negligence while on such excursion. In other words, while a mere disregard of instructions or deviation from the line of his duty by a servant does not relieve his master of responsibility, if the servant, for purposes of his own,

departs so far from the line of his duty that for the time being his acts constitute an abandonment of his service, the master is not liable."

To the same effect, see 5 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 179, § 3030.

The decisions of this court upon the subject under consideration are in harmony with the rules hereinabove stated. In *George v. Carstens Packing Co.*, 91 Wash. 637, 158 Pac. 529, the driver of a delivery truck departed from his regular route a distance of six or seven blocks for the purpose of taking a fellow employee to his home. The fellow employee had not been directed to accompany the driver, but had gone along merely for the ride and to keep the driver company. The accident occurred while the driver was returning from the side trip. This court affirmed a judgment against the owner of the truck, upon the ground that the driver's departure was so slight, under the circumstances, as not to take him out of the scope of his employment, as a matter of law, and that the question was properly submitted to the jury as one of fact.

In *Buckley v. Harkens,* 114 Wash. 468, 195 Pac. 250, the evidence showed that, on the day of the accident there involved, an employee of the defendant company left the company's place of business with one of its automobiles to go to his home, as he was authorized to do; that, on leaving, he carried with him another employee of the company, going somewhat out of his direct route in order to put such employee off at a ferry; and that the accident occurred while the driver was on his way home from the ferry. It was contended by the defendant company that the driver was outside the scope of his employment at the time of the accident. This court held, however, that the facts as above stated furnished sufficient evidence to support the verdict.

In *Murray v. Kauffman Buick Co.*, 197 Wash. 469, 85 P. (2d) 1061, it was held that whether the driver of the defendant's automobile was at the time of the accident within the scope of his employment was a question of fact for the jury, under the evidence adduced, and not a question of

law to be disposed of by the court. In its opinion, this court reiterated the rule above stated, that the mere fact that the predominant motive of the servant was to benefit himself or a third person does not prevent the act from being within the scope of the servant's employment, and, further, that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person is injured, but the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master.

Appellant herein cites the following cases and quotes therefrom certain passages, in support of his contention: *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165; *McQueen v. People's Store Co.,* 97 Wash. 387, 166 Pac. 626; *Savage v. Donovan,* 118 Wash. 692, 204 Pac. 805; *Mitchell v. Nalley's, Inc.,* 163 Wash. 183, 300 Pac. 526; *Van Court v. Lodge Cab Co.,* 198 Wash. 530, 89 P. (2d) 206; *Brazier v. Betts,* 8 Wn. (2d) 549, 113 P. (2d) 34.

In the *Ludberg* case, *supra,* the evidence disclosed that the automobile causing the injury, although the property of the defendant, had been loaned by the owner to a third party on the occasion in question and was being used at that time upon an errand with which the defendant owner had no connection whatever. The situation there was entirely different from the one involved here.

In the *McQueen* case, *supra,* it was held that the driver of the defendant's truck was acting without the scope of his employment when he invited two girls to ride upon the running board of the truck. In the course of the operation of the vehicle, one of the girls jumped or was thrown from the running board and was injured. The case presents no similarity to the one at bar.

In the *Savage* case, *supra,* from which we have already quoted, it appears that three members of the family of the owner of an automobile took two friends upon a pleasure trip lasting several hours. At the end of the trip the car was entrusted to one of the friends for delivery to the

garage, a short distance away. The friend took the car upon an excursion of his own lasting an hour and a half and during that time became involved in a collision in which a third party was injured. This court rightly held, as a matter of law, that the driver's deviation from his authorized line of travel was so marked and continuous as to take him outside the scope of his authority. The case well illustrates the conditions under which the general rule does not apply, but is in no sense controlling of the case at bar.

In the *Mitchell* case, *supra,* it appears that an employee, on a day when she was not working, obtained permission from her employer to use the latter's automobile for a special half-hour's errand. At the conclusion of the errand, and after returning to the employer's place of business and without the employer's knowledge or consent, the employee again took the car and in company with her mother went upon a pleasure excursion, during which the accident occurred. This court held, notwithstanding a verdict in favor of the injured plaintiff, that the driver of the automobile was without the scope of her authority at the time of the accident and that the owner of the car could not be held liable for her negligence. That case likewise well illustrates the inapplicability of the general rule, but its facts are totally different from those which are presented here.

In the *Van Court* case, *supra,* it was shown that the driver of a taxicab had radically departed from the service for which he was employed and at the time of the accident had entered upon a drinking excursion with several boon companions. It was held by this court, upon the evidence there adduced, that the negligent acts of the driver were not committed while either actually or apparently engaged in the furtherance of the cab company's business and therefore cast no liability upon the company. That case was rightly decided, but it falls within a class obviously different from the one here.

The *Brazier* case, *supra,* is so dissimilar in point of fact from the case at bar as to have no application to the situation with which we are presently concerned.

We conclude our discussion by saying, as may al-

ready have been inferred, that, in our opinion, the evidence in this case clearly presented a question of fact as to whether Prater was within the scope of his employment at the time of the collision, and that the finding of the trial court upon that question is amply supported by the evidence.

The judgment is affirmed.

BEALS, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.