213 So.2d 784 (1968)
Keete M. LAWRENCE, Individually and for the Use and Benefit of the minor, Jackie K. Lawrence, Plaintiff-Appellant,
v.
WESTCHESTER FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 11060.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1968.
Rehearing Denied September 25, 1968.
Lowe & Benton, Minden, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for defendant-appellant.
*785 Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
This action was brought on behalf of Jackie K. Lawrence, a minor guest passenger, and his father, Keete M. Lawrence, for injuries sustained by the guest while riding in an automobile owned by Fred W. O'Bier and driven by his minor son, Michael K. O'Bier. The Westchester Fire Insurance Company, the liability insurer of Fred W. O'Bier, is named as the lone defendant. The case was tried on its merits and resulted in a judgment of $12,000 for the injuries to Jackie K. Lawrence and $464.60 for expenses incurred by Keete M. Lawrence. Both sides have appealed.
Both of the above named minors were 16 years of age at the time of the accident. The trial court made a finding of the following facts which are not seriously in dispute: On October 8, 1965 the Springhill High School football team was scheduled to play its annual game with the Homer High School team. Sometime in the latter part of the afternoon of the above date Michael O'Bier, driving his father's automobile, picked up Jackie Lawrence in Springhill for the trip to Homer to watch the game. The two youths, drove to Homer, watched the game, and shortly before the final whistle left the stadium to return to their homes in Springhill. With young O'Bier driving they left Homer on Louisiana Highway 2 traveling west intending to turn north on Louisiana Highway 159. However, young O'Bier lost his way and in error turned onto Louisiana 521 and proceeded northerly along that road. After following this road several miles he discovered his error, turned around, and headed back south towards Highway 2.
Before O'Bier turned off on 521 young Lawrence had removed his shoes and fallen asleep. Shortly after O'Bier had headed back towards his correct route, driving at a very high rate of speed, he entered a curve and lost control of the vehicle which traveled approximately 180 feet with its two right wheels in the ditch at which point it struck the culvert of a private driveway, catapulted into the air with the car thereafter overturning but eventually coming to rest right side up, 279 feet from where it first went off the highway.
Sgt. Donald R. Vetch of the Louisiana State Police, investigated this accident, arriving at the scene shortly afterwards, and found that Jackie Lawrence had been thrown from the car at a point approximately 39 feet from where the car hit the ground after having been catapuled into the air. He testified that he talked to Michael O'Bier and after examining the site of the accident and the automobile, he questioned O'Bier and was of the opinion that O'Bier had attempted to negotiate the curve at a high rate of speed which he estimated to have been from 70 to 75 miles per hour. He further testified that in his opinion such speed was clearly excessive with regard to the condition of the highway at the place of this accident.
The defendant liability insurer has conceded Michael O'Bier was guilty of negligence and that issue, although raised in the trial court, is no longer urged. However, the insurer does argue that the decision of the trial court was in error in holding Jackie Lawrence was free of contributory negligence and did not assume the risk of injury; in holding that he was not negligent when without protest he acquiesced in the excessive rate at which the automobile was being operated; and that he was not contributorily negligent because of his failure to use and avail himself of seat belts which were provided for his use. Finally, defendant asserts the award made to plaintiff was excessive. Plaintiff urges the district court was in error in awarding inadequate travel expenses of Keete M. Lawrence, and inadequate compensation for the injuries received by Jackie Lawrence.
We turn our attention first to the charge of contributory negligence for failure of Lawrence to use his seat belt. The following *786 is taken from Miller v. Miller, 160 S. E.2d 65, 68, a decision rendered by the Supreme Court of North Carolina on March 20, 1968:
"Since 1960, thirty-three states and the District of Columbia have enacted seatbelt legislation. See Comment, The Failure to Use Seat Belts as a Basis for Establishing Contributory Negligence, Barring Recovery on Personal Injuries, 1 U.San Francisco L.Rev. 277 (1967), Appendix I, 290. Most of these statutes apply only to cars manufactured in 1962 or later. No state requires the belt to be used after installation except Rhode Island, which makes their use mandatory in certain government and public service vehicles only. Minnesota, Tennessee, and Virginia, specify that a failure to use the seat belts shall not be deemed contributory negligence. 16 DePaul L. Rev. 521, 522 (1967); Roethe, Seat Belt Negligence in Automobile Accidents, 1967 Wis.L.Rev. 288, 289 [hereinafter cited as Roethe]. It appears, therefore, that the seat belt enactments are not absolute safety measures and that no statutory duty to use the belts can be implied from them. The North Carolina Legislature's failure to require the installation of belts in all licensed passenger vehicles and in buses, plus the limited requirements of only two sets of such belts in the front seat, supports this conclusion. Thus, if there be a duty to use an available seat belt, it is imposed by the common law." [160 S.E.2d 65, 68]
Seat belts are designed to prevent serious injuries caused by ejection from automobiles and by buffeting about in it. Many people fail to use them because of the fear or entrapment in a burning or submerged car and there is also the belief that seat belts increase the frequency or severity of abdomen, pelvis and lumbar sprain injuries. Roethe, Seat Belt Negligence in Automobile Accidents, 1967. According to figures collected by the National Safety Council in 1965 the average individual used his seat belt only 16% of the time he spent in automobiles and although seat belts are now available to more than one-half of passenger car occupants the percentage of all exposure hours during which passenger car occupants are using seat belts are estimated to be only 20 to 25 per cent. National Safety Council Accident Facts 53 (1967). Some of the researches have concluded that the standard waist-type seat belt can cause more rather than less injuries in many crash conditions and that use of seat belts is limited in value. Others, and this seems to be the majority, have concluded that the seat belt is a valid safety device and significantly reduces injuries and fatalities in automobile accidents. See Miller v. Miller, supra. Whatever may be the true value of the seat belt as a factor in preventing injuries, it seems to be recognized that the failure to have the seat belt fastened does not contribute to the occurrence of the accident. Brown v. Kendrick, 192 So.2d 49 (Fla. Dist.Ct.App.1966); Kavanagh v. Butorac, Ind.App., 221 N.E.2d 824 (1966). Whether or not the occupant of an automobile is contributorily negligent in failing to fasten a seat belt would seem to be determined by his knowledge of conditions prevailing prior to the accident and not in the light of his hindsight.
We have no hesitancy in rejecting the contention that the failure of Jackie Lawrence to use the seat belt which was available to him constituted negligence. In the absence of a statute prescribing that failure to use an available seat belt would be negligence, per se, we can conceive of no instance in which such failure could be considered a proximate cause of the accident. We accept the conclusion reported in Brown v. Kendrick, supra, that plaintiff's failure to fasten the seat belt does not contribute to the occurrence of the accident. The defendant having plead contributory negligence has the burden of proving the affirmative defense herein urged and in this instance we hold that it has not established the defense.
*787 The plea of contributory negligence is urged on the additional ground that Jackie Lawrence went to sleep while the automobile was being driven at a fast and excessive rate of speed and on a strange road at night. In the case of Benson v. Metropolitan Casualty Insurance Company of New York, La.App., 79 So.2d 345 (2nd Cir. 1955), the facts were somewhat similar to those in the case at bar. The driver of the car was traveling at a speed of 65 to 70 miles per hour. The court made the following finding:
"* * * From all the testimony, we are convinced he was driving in excess of 60 miles per hour, which, under the circumstances, was dangerous at night. He was familiar with the fact that in that territory livestock roamed at large; he was also familiar with the warning or caution signs to that effect. The testimony does not disclose with any degree of certainty the exact distance from the top of the hill over which the car passed to the point of impact with the mule on the highway. Tyler testified that plaintiff's counsel stepped off the distance, exceeding 200 steps, in his presence when he pointed out the location of the accident. There was no obstruction to view after reaching the crest of the hill and thereafter, from the fact that the road was practically straight and considering the distance to the mules, there was ample time, space and opportunity for the driver to have taken precautions to avoid the accident, which he said he did not do but continued forward, swerving the car to the left to miss the mules and then to the right to avoid a collision with a car approaching from the opposite direction, which maneuver resulted in the car striking the mule and causing the damage and injuries inflicted on plaintiff. Tyler's speed, failure to keep a proper lookout and to take precautions to avoid the accident constituted the sole and proximate cause thereof." [79 So.2d 345, 351]
In rejecting the plea that the guest in the cited case, Benson, was guilty of contributory negligence by failing to protest or warn the driver of the danger, the court held he was entitled to reasonably rely upon the driver for the exercise of necessary care and caution, and quoting from Herget v. Saucier, 223 La. 938, 67 So.2d 543, stated:
`Generally, a guest passenger is not required to keep a constant lookout for the dangers of the highway, or to pay attention to the ordinary road and other traffic conditions incident to automobile driving, it being his right and privilege to place reasonable reliance upon the driver in charge of the car for the exercise of the necessary care and caution. Of course, if he is aware of a danger ahead which apparently is unknown to the driver, or if he observes that such driver is incompetent or otherwise unfit to operate the machine, a duty devolves upon him to take some precautionary action. White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245 [42 A.L.R.2d 338] (and authorities cited in both majority and dissenting opinions thereof).' [79 So.2d 345, 351, 352]
Accordingly, we hold the insurer has failed to sustain its plea of contributory negligence on any of the grounds urged.
Both litigants have disagreed with the quantum allowed plaintiff. After leaving the highway, the automobile driven by O'Bier went into the ditch at an excessive rate of speed, struck the culvert of a private driveway and after overturning, came to rest upright. Jackie Lawrence was ejected from the car approximately 39 feet, landing upon the hard-surfaced highway. He was attended by Dr. George Byrum of Haynesville, who administered first aid treatment for multiple bruises and contusions. After a preliminary examination the patient was taken by ambulance to the Schumpert Hospital in Shreveport and *788 placed under the care of Dr. E. C. Simonton, orthopedist. The more serious injuries were diagnosed as cerebral concussion, a small fracture of the acetabulum (socket for the hip joint) and a dislocated left hip. After reduction of the dislocation the left leg was placed in traction. Young Lawrence was hospitalized for several weeks at the Schumpert before being transferred to Gray's Clinic at Springhill where he continued to receive medical care under Dr. W. C. Gray. It was also found that a congenital or developmental back condition, a spondylolisthesis, was aggravated by the accident, and was causing pain requiring the use of a Williams Back Brace which was still being worn at the time of trial on December 14, 1966. The left leg was shortened requiring that the height of his shoe be increased 3/8ths of an inch. Because of the instability of the left hip and the back condition, Dr. Simonton advised against further active participation in organized sports. Upon examinations made by Dr. Simonton and by Dr. Ray E. King, othopedist, who also examined young Lawrence, pain and disability persisted more than one year following the accident. The medical testimony reveals that severe pain persisted for a considerable length of time and the trial judge observed that tenderness in the occipital area of the head was noticeable at the time of trial of the case. Plaintiff has asked that the award for personal injuries be increased to $20,000 and defendant argues that an award of $2,000 would be adequate. We have examined citations in which damages have been determined for injuries somewhat analogous, such authorities appearing in the written opinion of the trial court and briefs of both sides in the case at bar. After consideration we have concluded that the award made by the trial court is neither excessive nor inadequate. Nor do we find error in the court's holding as to the expenses incurred by Keete M. Lawrence.
For the reasons hereinabove set forth, the judgment is affirmed at the cost of defendant-appellant.