[No. 44616. En Banc. October 13, 1977.]

GEORGE B. AMEND, ET AL, *Respondents,* v. ROBERT L. BELL, ET AL, *Petitioners.*

*Smith, Donohue & Compau, Lawrence Cary Smith, Patrick J. Downey, Malott & Southwell, P.S.,* and *Robert A. Southwell,* for petitioners.

*Richter, Wimberley & Ericson,* by *William P. Wimberly* and *Gary N. Bloom (Cheryl DeMers Kingen,* of counsel), for respondents.

*Daniel F. Sullivan* and *Gregg L. Tinker* on behalf of Washington State Trial Lawyers Association and *Malcolm L. Edwards,* amici curiae.

BRACHTENBACH, J.—This is a personal injury suit arising from an intersection collision. To get at the issues, we need to consider the pleadings. The individual defendant, who was the disfavored driver in an uncontrolled intersection, admitted in his answer that he failed to yield the right-of-way and that such was a proximate cause of the collision. He alleged that plaintiff was guilty of negligence, and/or contributory negligence, and/or comparative negligence which was a proximate cause of the collision. Defendant alleged that plaintiff driver's Volkswagen was equipped with a shoulder harness seat belt, but that she was not wearing it at the time of the collision which caused in whole, and/or contributed to, and/or enhanced, and/or aggravated her injuries. Plaintiff alleged that the individual defendant, a lawyer, was acting within the scope of his employment by the defendant professional services corporation which employed defendant lawyer and in which he was a stockholder and officer. Defendant alleged that he was not acting within the scope of his employment.

Those pleadings precipitated a flurry of motions. Plaintiff sought a motion in limine to exclude the seat belt defense. Defendants moved for summary judgment to have the professional services corporation dismissed on the ground that the driver was not within the scope of his employment. Defendants filed motions in limine to exclude any evidence that defendant driver had consumed any alcohol before the collision or that he may have been exceeding the speed limit at or immediately before the collision.

The trial court ruled: (1) the professional services corporation should be dismissed; (2) evidence of drinking and speed was admissible; (3) no voir dire or evidence on the seat belt defense would be allowed. The Court of Appeals granted discretionary review limited to the seat belt

defense and dismissal of the corporation. The Court of Appeals then certified the case to this court. Recognizing the unanswered issues on the seat belt defense and the ramifications of comparative negligence, we expanded discretionary review to all issues ruled upon by the trial court. We affirm the trial court on all issues.

 Dismissal of the professional services corporation was proper. Consideration of the depositions and an affidavit does not reveal any genuine issue of material fact. Except for the issue of the defendant driver's credibility, with which we will deal later, plaintiff did not produce any evidence to show that defendant driver was within the scope of his employment by the corporation. It is elementary that the employer is liable for the tort of an employee only when the employee is acting within the scope of his employment at the time of the tortious conduct. We recognize that scope of employment is essentially a factual question. To accommodate the widely varying fact patterns which may exist, we have created a presumption of fact when an employee is driving an employer's car. In *Bradley v. S.L. Savidge, Inc.*, 13 Wn.2d 28, 123 P.2d 780 (1942), we held that when an employee is driving the employer's automobile, a presumption of agency arises; that is, that the driver was the owner's agent and that he was acting within the scope of his employment at the time of collision. *Bradley* held that that presumption can be overcome by competent evidence from either interested or disinterested witnesses, provided that their testimony is uncontradicted, unimpeached, clear and convincing. When evidence of that character is adduced, the court held that the presumption disappears and casts upon the plaintiff the burden of producing evidence to meet that of the defendant and to establish as a fact that the driver was the agent and was acting within the scope of his authority.

Looking at the facts established by the depositions and affidavit, at the time of the collision defendant lawyer was

driving an auto leased by the professional services corporation which furnished cars for all the officers of the corporation. This is sufficient to raise the presumption of agency.

In rebuttal of the presumption and in support of its motion for summary judgment, defendant corporation established by depositions and affidavit the following facts. First, the vehicle driven by defendant lawyer was available to him for both *personal* and business purposes.

Further, defendant testified that on the day of the accident, a Friday, he left his office at the usual time. He had no intent of returning to the office until Monday. He did not take any work home with him. He seldom did any legal work at home. He did not maintain any office equipment or library at home. He did not intend to visit any clients, investigate any matters or otherwise tend to office business over the weekend.

On the way to his parking place, defendant lawyer met another lawyer who asked for a ride home. Defendant did transport the other lawyer to his home which was in the general direction of defendant's route home. The only testimony is that such was a gesture of accommodation only, that there was no business pending or anticipated between defendant's firm and the other lawyer.

This evidence is clear, convincing and uncontradicted. There were no inconsistencies in testimony of defendants despite extensive cross–examination. And, that an attorney going home from work had no intent to further his employer's business is logical. Excluding the issue of impeachment, we conclude that the evidence overcame the presumption of agency.

■ Excluding the issue of impeachment, we conclude that the uncontradicted evidence established that there was no genuine issue of material fact. A presumption is not evidence; its efficacy is lost when the opposite party adduces prima facie evidence to the contrary. *Bates v. Bowles White & Co.*, 56 Wn.2d 374, 353 P.2d 663 (1960). The depositions and affidavit were uncontradicted. Plaintiff presented no facts in rebuttal, but instead relied on the presumption to

carry his burden of establishing the existence of a material fact. But the presumption had become a nullity. In effect, plaintiff presented no factual dispute to the court. Therefore, the summary disposition of the issue was appropriate.

■ However, plaintiff argues that the testimony of defendant Bell was impeached. Plaintiff's argument has twofold significance. One, to overcome the presumption that an employee was acting within the scope of his employment, the defendant's evidence must be unimpeached. This is but another way of saying that there must be no genuine issue of credibility. Second, the court should not resolve a genuine issue of credibility at a summary judgment hearing. If such issue is present, the motion should be denied. An issue of credibility is present if there is contradictory evidence or the movant's evidence is impeached. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963).

The fault with plaintiff's argument lies with the matters asserted to constitute impeachment. Plaintiff attempts to attack the credibility of defendant Bell's testimony about scope of employment by arguing that there are weaknesses in his testimony concerning speed and intoxication.

■ Defendants concede that credibility issues may preclude a summary judgment in appropriate circumstances but argue, correctly, that such issues must be based on more than argument and inference on collateral matters. To hold that disputed facts about other issues preclude a summary judgment without facts related to the issue in point would abrogate the summary judgment procedure. We agree with the court in *Rinieri v. Scanlon,* 254 F. Supp. 469, 474 (S.D.N.Y. 1966):

> [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and that the opposing party may not merely recite the incantation, "Credibility," and have a trial on the hope that a jury may disbelieve factually uncontested proof.

This rule is equally applicable to the presumption issue.

Plaintiff did not raise a genuine issue of material fact on this point and dismissal of the corporation defendant is affirmed.

■ Next we consider defendant's motion in limine as to evidence of alleged speed and intoxication of defendant driver. In *Fenimore v. Donald M. Drake Constr. Co.,* 87 Wn.2d 85, 91, 549 P.2d 483 (1976), we delineated the rules governing a motion in limine:

> [T]he trial court should grant such a motion if it describes the evidence which is sought to be excluded with sufficient specificity to enable the trial court to determine that it is clearly inadmissible under the issues as drawn or which may develop during the trial, and if the evidence is so prejudicial in its nature that the moving party should be spared the necessity of calling attention to it by objecting when it is offered during the trial.

*See also* Comment, *Motions in Limine in Washington,* 9 Gonzaga L. Rev. 780 (1974).

The critical matter then is whether all of the evidence of the defendant's conduct is admissible on the issue of comparative negligence when a defendant admits that one of his acts was a proximate cause of the injury, but claims plaintiff's negligence was also a proximate cause. Specifically in this case, can plaintiff introduce evidence of alleged intoxication and speed when defendant admits that his failure to yield the right–of–way was a proximate cause of the collision and plaintiff's injuries?

The essential question is whether, in a comparative negligence setting, a defendant can shield his total alleged acts of negligence from the jury by admitting to one act of negligence while exposing all of the blameworthy conduct of the plaintiff. We think not.

■ Comparative negligence means comparison. The trier of fact *compares* the negligence of plaintiff and defendant. Fault is compared to fault. Thus to determine the negligence of the parties, the trier of the facts must hear the totality of fault. Failure to yield the right–of–way

may be a proximate cause of a collision, but how much more responsibility for the injury was attributable to the defendant who might have been intoxicated or speeding. If we have comparative negligence, we must look at all of the proximate causes of the collision and its consequent injuries.

Dean Prosser recognized this totality of fault concept when he wrote that

"Comparative negligence" properly refers only to a comparison of the fault of the plaintiff with that of the defendant. It does not necessarily result in any division of the damages, but may permit full recovery by the plaintiff notwithstanding his contributory negligence. . . .

W. Prosser, *Comparative Negligence,* 51 Mich. L. Rev. 465 n.2 (1953). He stated further on page 482 that

[T]he recoverable damages must be reduced in the proportion which the plaintiff's fault, or the extent of his departure from the required standard of conduct, bears to the total fault of plaintiff and defendant; . . .

In short, we must compare all of the defendant's fault with all of the plaintiff's fault. If defendant's contentions were upheld, then a plaintiff could admit to a proximate cause act of negligence and the defendant could admit to a proximate cause act of negligence and the trier of the fact would not learn what actually happened in a complex series of acts and conditions which caused the ultimate results. Such is not comparative negligence. Comparative negligence is comparative: plaintiff's conduct versus defendant's conduct. The trial court properly denied defendant's motion in limine.

The final issue is whether evidence should be admitted that the plaintiff wife driver was not wearing an available seat belt harness at the time of collision.

Defendants argue that under the doctrine of comparative negligence evidence is admissible to prove that plaintiff wife was not wearing an available harness seat belt. They

allege that such failure either caused all her injuries, contributed to, enhanced or aggravated those injuries.

When the law of this state encompassed contributory negligence, we held that failure to wear a seat belt was not contributory negligence. We reasoned that there was no statutory duty to wear an available belt and declined to impose a common–law duty. *Derheim v. N. Fiorito Co.*, 80 Wn.2d 161, 492 P.2d 1030 (1972).

Defendants contend that comparative negligence avoids the harsh result of contributory negligence which would bar all recovery, and that the comparative negligence statute abrogated our prior case law on the seat belt defense. We disagree. While the result of contributory negligence and comparative negligence is much different, both are premised upon negligence. In the one case we bar recovery, in the other we compare negligence and potentially reduce damages. However, in either case, we look to the negligence of the plaintiff.

█ The premise upon which negligence rests is that an actor has a legally imposed duty, *i.e.*, a standard of conduct to which he must adhere. That duty may spring from a legislative enactment of the standard of conduct or from a judicially imposed standard. Deviation from that standard of conduct must occur to have negligence. W. Prosser, *Handbook of the Law of Torts* § 30 (4th ed. 1971).

█ Our legislature has not mandated the use of seat belts as a standard of conduct. RCW 46.37.510 only requires installation of front seat belts on automobiles manufactured after 1964. We have held, along with the vast majority of other states, that such a statute does not make mandatory the use of the seat belts. *Derheim v. N. Fiorito Co., supra;* see cases cited on pages 133–34.

The question then is whether the court should impose a standard of conduct upon all persons riding in vehicles equipped with seat belts. We think we should not.

The defendant should not diminish the consequences of his negligence by the failure of the plaintiff to anticipate the defendant's negligence in causing the accident itself.

Only if plaintiff should have so anticipated the accident can it be said that plaintiff had a duty to fasten the seat belt prior to the accident.

There are a number of reasons why we reach this conclusion. We have noted that the plaintiff need not predict the negligence of the defendant. Second, seat belts are not required in all vehicles. Defendant should not be entitled to take advantage of the fortuitous circumstance that plaintiff was riding in a car so equipped.

Third, while not controlling as to the standard of conduct, it is a fact and persuasive that the majority of motorists do not habitually use their seat belts. Studies show that as many as two–thirds of observed drivers did not use seat belts. "Belt Use '76," Insurance Institute for Highway Safety, 1976. Belt use by passengers and children is even lower, one research paper revealing that 93 percent of observed children under 10 were not restrained by belts and 89 percent of passengers 10 years or older were not using available belts. Alan F. Williams, "Observed Child Restraints Use in Automobiles," 130 *The American Journal of Diseases of Children* (December 1976).

Fourth, allowing the seat belt defense would lead to a veritable battle of experts as to what injuries would have or have not been avoided had the plaintiff been wearing a belt. At best it would cause substantial speculation by the trier of the facts.

The majority of courts which have considered the question has rejected the defense. *See, for example: Barry v. Coca Cola Co.,* 99 N.J. Super. 270, 239 A.2d 273 (1968); *Birdsong v. ITT Continental Baking Co.,* 312 N.E.2d 104 (Ind. Ct. App. 1974); *Britton v. Doehring,* 286 Ala. 498, 242 So. 2d 666 (1970); *Brown v. Case,* 31 Conn. Supp. 207, 327 A.2d 267 (1974); *Brown v. Kendrick,* 192 So. 2d 49 (Fla. Dist. Ct. App. 1966); *Cierpisz v. Singleton,* 247 Md. 215, 230 A.2d 629 (1967); *D.W. Boutwell Butane Co. v. Smith,* 244 So. 2d 11 (Miss. 1971); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okla. 1976); *King Son Wong v. Carnation Co.,* 509 S.W.2d 385 (Tex. Civ. App. 1974), *aff'd*

*per curiam,* 516 S.W.2d 116 (Tex. 1974); *Lawrence v. Westchester Fire Ins. Co.,* 213 So. 2d 784 (La. Ct. App. 1968); *Lipscomb v. Diamiani,* 226 A.2d 914 (Del. Super. Ct. 1967); *McCord v. Green,* 362 A.2d 720 (D.C. 1976); *Miller v. Haynes,* 454 S.W.2d 293 (Mo. Ct. App. 1970); *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968); *Fischer v. Moore,* 183 Colo. 392, 517 P.2d 458 (1974); *Nash v. Kamrath,* 21 Ariz. App. 530, 521 P.2d 161 (1974); *Placek v. Sterling Heights,* 52 Mich. App. 619, 217 N.W.2d 900 (1974); *Robinson v. Lewis,* 254 Ore. 52, 457 P.2d 483 (1972); *Selgado v. Commercial Warehouse Co.,* 88 N.M. 579, 544 P.2d 719 (1975); *Stallcup v. Taylor,* 62 Tenn. App. 407, 463 S.W.2d 416 (1971).

It is urged that our prior holdings regarding this defense have been overruled inferentially by *Baumgardner v. American Motors Corp.,* 83 Wn.2d 751, 522 P.2d 829 (1974). We do not agree. In *Baumgardner* we only held that there was liability upon an automobile manufacturer for producing a car with a seat that came loose in a collision, propelling the passengers forward while the seat belt remained in place, causing enhanced injuries. In fact, *Baumgardner* illustrates the uncertainty surrounding the use of belts. There, the wife passenger, wearing a belt, suffered fatal abdominal injuries. The husband driver, wearing no belt, was only slightly injured.

We conclude that evidence that the plaintiff was not wearing a seat belt or shoulder harness should be excluded.

The rulings of the trial court are affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, and HICKS, JJ., concur.

DOLLIVER, J. (concurring in the result)—I concur in the result reached by the majority. However, with respect to the majority's comments on the seat belt defense, I am unpersuaded.

The majority says the question is "whether the court should impose a standard of conduct upon all persons riding in vehicles equipped with seat belts." This is not so. Given the common knowledge obtained from the massive educational campaign as to the effectiveness of seat belts for driver safety (*see* J. Hoglund & A. Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law,* 50 Wash. L. Rev. 1 (1974)), in a seat belt situation as here the question rather should be whether a reasonable woman of ordinary prudence possessed of this knowledge and considering the probability of being involved in an accident and the probable severity of the harm to herself as a result of such an accident would make use of available belts for her own protection. J. Kircher, *The Seat Belt Defense—State of the Law,* 53 Marq. L. Rev. 172, 184 (1970).

The specter raised by the majority as to "a veritable battle of experts" is just that: a ghostly apparition with no substance. Surely the testimony of experts on seat belts would cause no more "substantial speculation by the trier of the facts" than numerous other factual issues which are routinely addressed.

Matters of negligence and standard of care are not considered in a vacuum. The whole purpose of bringing the action is for a money judgment to be obtained by the plaintiff against the defendant. I fail to see the peculiar mystique of seat belts which prevents their use or nonuse from being considered as a factor in any eventual recovery plaintiff may secure. This question should be particularly pertinent in a comparative negligence state such as Washington.

Nonetheless, since *Derheim v. N. Fiorito Co.,* 80 Wn.2d 161, 492 P.2d 1030 (1972), the more salutary rule does not appear to be the law of the state. Thus my concurrence.

STAFFORD, J. (concurring in part; dissenting in part)—I concur with the majority opinion except insofar as it concludes that a summary judgment was properly entered dismissing the professional services corporation.

The basic issue is whether there is any genuine issue of material fact which would contravene the corporation's motion.

The purpose of summary judgment procedures is to avoid an unnecessary trial when there is no genuine issue of material fact. However, a trial is absolutely necessary if there is a genuine issue as to *any* material fact. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975); *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974); *Preston v. Duncan,* 55 Wn.2d 678, 681, 349 P.2d 605 (1960). A "material fact" is one upon which the outcome of the litigation depends. *Morris v. McNicol, supra; Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 500 P.2d 88 (1972). CR 56(c) provides that summary judgments may be rendered on the basis of "the pleadings, depositions, and admissions on file, together with the affidavits, if any," submitted by the parties.

Initially the burden is on the party moving for summary judgment to prove by *uncontroverted facts* that there is no genuine issue of material fact. *LaPlante v. State, supra* at 158; *Rossiter v. Moore,* 59 Wn.2d 722, 370 P.2d 250 (1962); 6 J. Moore, *Federal Practice* ¶ 56.07, ¶ 56.15[3] (2d ed. 1948). If the moving party does not sustain that burden, summary judgment should not be entered, irrespective of whether the nonmoving party has submitted affidavits or other materials. *Preston v. Duncan, supra* at 683; *see also* Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1 (1970).

In ruling on a motion for summary judgment, the court *must consider the material evidence and all reasonable inferences therefrom most favorably for the nonmoving party* and, when so considered, *if reasonable people might reach different conclusions, the motion should be denied. Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966

(1963); 45 Wash. L. Rev. 4, 5; *see also* 6 J. Moore, *Federal Practice* ¶ 56.11[3], ¶ 56.15[3].

For the reasons stated in Mr. Justice Utter's dissent, I am not convinced that the defendant personal service corporation has carried its initial burden. Given the facts of this case, reasonable people might easily reach different conclusions. Thus, the trial court should not have granted defendant corporation's motion for summary judgment.

UTTER, J. (dissenting)—I agree with the majority opinion except for its conclusion that a summary judgment should be entered dismissing the professional services corporation. The majority recognized it is presumed, when an employee is driving his employer's automobile, that both agency exists and the driver is acting within the scope of his employment. It then concludes, however, that the testimony of the defendant rebuts and overcomes the presumption. I do not so view the evidence. The majority's conclusion overlooks the accepted rule that respondent is entitled to the reasonable inferences from the evidence, and given these, I believe a jury question does exist.

There are inferences which can be drawn from the evidence which support the existence of liability on the part of the corporation. It could be argued a business relationship existed between the lawyer Mr. Bell drove home on the evening of the accident and Bell's firm. This lawyer had several cases referred to him prior to the time of the accident by Mr. Maxey, a partner of Mr. Bell. After the accident, this lawyer referred a case to Mr. Maxey and his testimony also indicated that he may have referred cases to Mr. Maxey prior to the accident, although he could not recall with certainty.

I believe plaintiff should also be entitled to argue to the jury that there' was a business benefit to the firm from a partner being observed by the general public driving a prestigious automobile. A lawyer's referrals come from diverse sources, many of them impossible to identify in advance. It is fair to say, however, that many professional

men, including lawyers, are concerned with presenting an image of success to the public at large as a means of encouraging a belief in their competence. This image is a composite of several factors; office location, furnishings, personal appearance, and community recognition are but a few. This firm apparently considered it to be an important factor in presenting such an image of success for its partners to be seen driving luxury automobiles. The firm did lease a Ford LTD, but this was not assigned to a senior attorney. The firm paid for all lease costs and did not attempt to apportion them between personal use by the attorneys and business use. It also paid for all maintenance, repair and insurance costs.

I believe there were sufficient inferences from the testimony to present a jury question, even without the existence of the presumption of agency and action within the scope of employment recognized by the majority. If this presumption is given effect, an even stronger case is made out for rejecting the summary judgment on this issue.

We have held in the workmen's compensation setting that an employee is within the course of his employment while going to and from his place of work in an automobile furnished by the employer, where the use of the vehicle for such a purpose can fairly be said to have "'ripened into a custom to the extent that it is incidental to and part of the contract of employment'" and is a practice "'beneficial to both the employer and the employee.'" *Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 766, 767, 466 P.2d 151 (1970). A similar principle should control here. There can be little question that the use of the car here at issue was a recognized employment benefit provided to lawyers employed by the firm. Further, the firm clearly obtained a tax benefit from this arrangement and it may be logically inferred that the use of prestigious automobiles by the firm's senior attorneys provided intangible benefits to the corporation through enhanced community reputation and client goodwill.

Where the action of an employee can fairly be said, as here, to have a dual purpose—that is, to serve the desires of both the master and the servant—"no nice inquiry will be made as to which business the servant was actually engaged in when a third person is injured, but the master will be held responsible *unless* it *clearly appears* that the servant *could not have been* directly or *indirectly* serving his master." (Italics mine.) *Leuthold v. Goodman,* 22 Wn.2d 583, 594, 157 P.2d 326 (1945). *See Murray v. Kauffman Buick Co.,* 197 Wash. 469, 85 P.2d 1061 (1938); Restatement (Second) of Agency § 236, comment *b* (1958). Both *Leuthold* and *Murray* hold that in such circumstances the question of whether the act is within the scope of employment is to be resolved by the trier of fact and not as a matter of law. I see no reason to refuse to apply these established principles of agency law to a professional service corporation engaged in the activity of providing legal services. The facts before the trial court certainly would allow the jury to conclude the activity which gave rise to the plaintiff's injuries involved the use of an established employment benefit by an employee and also at least indirectly benefited the employer's business. This is all that need be shown to survive a motion for summary judgment.

The action of the trial court with regard to this issue was incorrect and should be reversed.

HOROWITZ, J., concurs with UTTER, J.

HOROWITZ, J. (dissenting)—I concur in the opinion of Utter, J., but also wish to associate myself with the comments of Dolliver, J., concerning the majority's rejection of the seat belt defense.

All car drivers and passengers know or are aware of the possibility that car accidents may occur and that in the exercise of reasonable care for personal safety, steps should be taken before an accident becomes imminent to avoid harmful effects that are avoidable or capable of being lessened. In fashioning a common–law rule involving due care

as the majority seeks to do, it is difficult to find adequate justification for so fashioning the rule that considerations of driver and passenger safety are ignored or subordinated to considerations of lesser priority.

When a car is equipped with seat belts pursuant to legislative mandate (RCW 46.37.510), it is obvious that they are placed in the vehicle so that they may be used and thus accomplish the purpose of their placement. To hold that they need not be used is both to disregard necessarily implied legislative intent they be used and to run afoul of the common–law principle governing recovery of damages that there should be no recovery of damages for harm avoidable by the exercise of due care. W. Prosser, *Handbook of the Law of Torts* § 64, at 433 (3d ed. 1964).

Reconsideration denied November 30, 1977.