Marvin H. DARE and Alice C.
Dare, Petitioners,

v.

Marvin L. SOBULE, Respondent.

No. 82SC162.

Supreme Court of Colorado,
En Banc.

Jan. 16, 1984.

Podoll & Podoll, P.C., Richard B. Podoll,
Robert J. Cunningham, Denver, for peti-
tioners.

Hall & Evans, James C. Perrill, Alan Epstein, Denver, for respondent.

ERICKSON, Chief Justice.

In a wrongful death action, Marvin H. and Alice C. Dare (petitioners) assert that the trial court committed reversible error in refusing to give a tendered jury instruction on failure to wear a motorcycle helmet.[1] The Court of Appeals affirmed a verdict for Marvin L. Sobule (respondent). *Dare v. Sobule,* 648 P.2d 169 (Colo.App.1982). We granted certiorari and now reverse and return this case to the Court of Appeals with directions to remand it to the trial court for a new trial.

## I.

On July 30, 1977, Tracy Dare (decedent) was riding a motorcycle eastward on Mississippi Avenue in Jefferson County when respondent, who was driving his automobile westward on that street, made a left turn in front of the motorcycle. The motorcycle struck the car and the decedent was thrown over the car by the impact, landed on his head, and died as a result of head injuries.

Petitioners brought this action against respondent to recover damages for the wrongful death of their son. At trial, two witnesses testified that decedent was not wearing a protective helmet at the time of the accident.[2] Petitioners did not object to the introduction of the evidence. The record reflects that respondent never saw the motorcycle driven by decedent. The evidence would have permitted the jury to find that decedent was traveling at a speed between 35 and 50 miles per hour.[3]

---

1. Petitioners contend also that the trial court erred in: (1) permitting respondent's expert witness to testify at trial where it was shown that the witness was not disclosed to petitioners for approximately ten months after his identity had been demanded through discovery; (2) informing the jury, immediately before giving them their final instructions, that the respondent had been hospitalized and was unable to attend the proceedings because of the illness. Because we reverse on the issue of the trial court's failure to give the tendered instruction, we need not reach these remaining issues.

2. The record indicates that Keith Green, petitioners' eyewitness to the accident, responded to respondent's cross-examination:

Q: "What was Tracy wearing at the time you circled the block?"
A [Green]: "Pair of pants, from what I remember. He wasn't wearing a shirt. It was pretty warm."
Q: "He was not wearing a shirt?"
A: "No."
Q: "Was he suntanned?"
A: "Yes."
Q: "Did he have a helmet on at that time?"
A: "No."
Q: "By that I mean, a motorcycle helmet?"
A: "No."
Q: "Wasn't wearing one on that trip?"
A: "No."

Officer Evans testified:
Q: "All right, could you in any way examine Tracy Dare at the scene of the accident?"
A [Evans]: "By the time I got there, I just visually checked him, and there was several people working on him from Flight for Life and Bancroft paramedics. He was probably on the scene no longer than five minutes from my arrival time."
Q: "Okay, from your observations, did you note any injury?"
A: "Oh, yes, definitely."
Q: "Explain that to the jury, what you observed."
A: "Very bad head injuries."
Q: "What part of the head?"
A: "If I recall correctly, the front part of the head and also I believe the left side, and they were pretty severe at that point."
Q: "Officer, if you can say, tell the jury whether these injuries that you observed were the type that would have been covered by a normal motorcycle helmet?"
A: "Yes, sir, they would have."
Q: "Did you notice a motorcycle helmet at the scene of the accident?"
A: "Mr. Dare was not [w]earing a helmet."
Q: "Can you tell me how he was dressed?"
A: "I don't recall specifically. It was jeans and a shirt, but I don't recall exactly what he was wearing, no, sir."

The record reveals also that a certificate of death was admitted into evidence which stated that the immediate cause of decedent's death was a "[h]ead injury." In addition, the investigator's traffic accident report, also admitted into evidence, indicates that decedent was not wearing a "crash helmet" at the time of the accident.

3. Ronald Hansen, respondent's expert witness, testified that the top speed that decedent could have been traveling immediately prior to the accident was fifty miles per hour. Green testified that he and decedent were riding motorcycles approximately parallel to each other prior to the accident. He further stated that after

Petitioners tendered the following proposed jury instruction: "To operate a motorcycle without wearing a helmet is not contributory negligence." The trial court, however, refused to give the tendered instruction on the ground that the instruction would give undue emphasis to one factor in the negligence equation. In refusing to give the instruction, the trial court ruled that, in presenting their closing arguments, neither side was to make reference to the failure of the decedent to wear a protective helmet.

The jury returned a verdict finding that both the decedent and the respondent were negligent, the negligence of each was a proximate cause of the claimed damages, and the percentage of negligence attributable to decedent was 80% and to respondent 20%. The jury also found that the amount of the petitioners' damages which were proximately caused by the collision was $4,089.14.

The Court of Appeals affirmed the verdict for respondent, and held that it would have been improper to give an additional instruction stressing the helmet issue, particularly where, as here, "defendant [respondent] did not assert [the failure of the decedent to wear a helmet] as a defense, and the issue was not presented to the jury."

## II.

Petitioners contend that the trial court's refusal to instruct the jury that failure to wear a helmet when riding a motorcycle did not constitute contributory negligence was reversible error. We agree.

## A.

When contributory negligence was a total bar to recovery for negligence, we held that failure to wear a seat belt was not contributory negligence. *Fischer v. Moore,* 183 Colo. 392, 517 P.2d 458 (1973). In *Fischer v. Moore, supra,* we said that there was no statutory duty to wear an available seat belt and held:

"In short, the seat belt defense, under the laws that existed prior to the adoption of our comparative negligence statute, is not an affirmative defense to an action for negligence, and evidence that the injured party failed to wear a seat belt may not be brought before the jury *in any form* to establish contributory negligence or to reduce the amount of the injured party's damages."

183 Colo. at 396, 517 P.2d at 460. (Emphasis added.) In that case, however, we expressly limited our holding to the situation where evidence of plaintiff's failure to wear a seat belt was offered to show plaintiff's contributory negligence, stating: "[B]ecause contributory negligence acts as a complete bar to recovery and rests upon different policy considerations, the conclusions reached in this decision should not be construed to apply as a bar to the seat belt defense, in a similar factual setting under the Colorado comparative negligence statute." 183 Colo. at 392, 517 P.2d at 459.

■ In our view, under the law of comparative negligence in Colorado, evidence of a plaintiff's failure to wear a protective helmet is inadmissible to show negligence on the part of the plaintiff or to mitigate damages.[4] *Taplin v. Clark,* 6 Kan.App.2d 66, 626 P.2d 1198 (1981) (no legal duty to use seat belt in anticipation of driver's negligence).

■ Both contributory negligence and comparative negligence are premised on negligence. Contributory negligence bars recovery; comparative negligence takes into account the negligence which caused the injury and reduces damages proportion-

---

having stopped at a traffic light, they made a left hand turn and proceeded east on West Mississippi Avenue. Although they started out together from the light, Green stated that decedent pulled ahead of Green. Green indicated that he, Green, was traveling between twenty and twenty-five miles per hour at the time of the accident. The speed limit along West Mississippi Avenue is thirty-five miles per hour.

4. In our view, decedent's failure to wear a protective helmet in this case is analogous to plaintiff's failure to fasten his seat belt in *Fischer, supra.*

ately. *See Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883 (Colo.1983). Under either theory, however, we consider the plaintiff's negligence in the balance. *Amend v. Bell,* 89 Wash.2d 124, 570 P.2d 138 (1977).

■ The premise upon which negligence rests is that a tortfeasor has a legally imposed duty or a standard of conduct to which he must adhere. The duty may derive from a legislative enactment of the standard of conduct or from a judicially imposed standard. *Amend v. Bell, supra.*

Our General Assembly has not mandated the use of protective helmets as a standard of conduct. In 1977, the General Assembly expressly repealed the portion of section 42–4–231, C.R.S.1973 (1982 Supp.), which required that all persons operating motorcycles wear protective helmets.[5]

■ The critical inquiry then is whether this court should impose a standard of conduct upon all persons riding motorcycles. We decline to impose such a standard for several reasons.

First, a defendant should not diminish the consequences of his negligence by the failure of the injured party to anticipate defendant's negligence in causing the accident itself. *See Amend v. Bell, supra; but see Bentzler v. Braun,* 34 Wis.2d 362, 149 N.W.2d 626 (1967). Second, a defense premised on an injured party's failure to wear a protective helmet would result in a windfall to tortfeasors who pay only partially for the harm their negligence caused. *See Fischer v. Moore.* Third, allowing the defense would lead to a veritable battle of experts as to what injuries would have or have not been avoided had the plaintiff

been wearing a helmet. *Amend v. Bell, supra.*

We hold, therefore, consonant with *Fischer v. Moore, supra,* that, under the Colorado Comparative Negligence Act, evidence of plaintiff's failure to wear a protective helmet is inadmissible to show negligence on the part of the injured party or to mitigate damages. *See Churning v. Staples,* 628 P.2d 180 (Colo.App.1981) (adopting the reasoning in *Fischer v. Moore, supra,* and holding that the seat belt defense is not available for purposes of determining the degree of plaintiff's negligence under the comparative negligence statute).

## B.

The thrust of respondent's argument is that evidence of decedent's failure to wear the protective helmet was admitted for a purpose other than to show decedent's negligence, and that because petitioners failed to object to its admission, the jury could therefore consider the evidence for any purpose. Respondent further contends that petitioners were not entitled to a corrective instruction limiting the probative force of the evidence because such an instruction would have given undue prominence to one feature of the case. We disagree.

■ As a matter of substantive law, it makes no difference that the evidence of failure to wear a protective helmet was not challenged by objection or a motion to strike at trial. *Huddleston v. Fergeson,* 564 S.W.2d 448 (Tex.Civ.App.1978) (testimony violative of parol evidence rule, a rule of substantive law, is without probative force whether objected to or not). In our view, the giving of petitioners' tendered instruc-

---

5. In 1966, many states, recognizing the dramatic increase in motorcycle accidents, enacted laws requiring the use of helmets by motorcycle riders. Inducement for these enactments was provided by the Federal Highway Safety Act, under the authority of which the Secretary of Transportation conditioned the availability of certain federal highway funding on the existence of state helmet-use statutes. By 1975, all but three states had passed mandatory helmet laws. However, in 1976, the Secretary of Transportation's authority to preserve enact-

ment of helmet laws was withdrawn, and states began to repeal their laws in rapid fashion. *See generally Helmetless Motorcyclists—Easy Riders Facing Hard Facts: The Rise of the Motorcycle Helmet Defense,* 41 Ohio St.L.J. 233 (1978).

In 1977, fourteen states, including Colorado, repealed their statutes. The collision in this case occurred on July 30, 1977, approximately two months after the Colorado General Assembly had repealed the mandatory helmet law.

tion would not only have been proper, but was necessary, in the light of our holding in *Fischer v. Moore, supra,* which severely limited the purposes for which evidence of a plaintiff's failure to utilize a seat belt may be considered by the jury. The improper admission of evidence of failure to wear a protective helmet provides a rational explanation for the jury's findings that decedent was 80% negligent and respondent was 20% negligent. We, accordingly, reverse and remand this case to the Court of Appeals with directions to remand to the trial court for a new trial.